## EVANS and others *vs.* WELLS & SPRING.

Where an *agent* compromised a claim of his principal, by receiving from a debtor money and other means of realizing a debt, and executed a *release*, in his own name, *it was held*, that such release not purporting on its face to have been made by the principal, or to have been executed by him, was not binding upon the principal *as a release*, and could not be set up by the debtor in bar of a recovery in an action brought for the recovery of the original debt.

*But it was further held*, that it was competent to the debtor for the purpose of establishing an *accord and satisfaction*, to prove by *parol* a *ratification* by the principal of the acts of the agent : by showing that with full knowledge of the facts he reaped the benefit of the compromise, by *accepting* in whole or in part, its fruits ; and for that purpose to produce the release *as evidence of the agreement*, and show a *compliance* on his par- with its requirements.

The rule that a contract under seal entered into by an *agent* to be binding upon the *principal*, must on its face purport to have been made *by the prin-*

Evans v. Wells.

*cipal*, and to have been executed *in his name*, and *not in the name of the agent*, is applied in all its rigour where the validity of the instrument in question depends upon the annexation of a *seal ;* but *it seems,* in reference to less formal writings, e. g. such as the evidence of ordinary commercial transactions, a more liberal interpretation prevails ; in such cases in furtherance of the public policy of encouraging trade, if it can upon the whole instrument be collected that the true object and intent were to *bind the principal* and *not merely the agent,* courts of justice will adopt that construction of it, however informally it may be expressed.*

ERROR from the supreme court. Wells & Spring brought an action of assumpsit against Thomas Evans and two oth-

---

\* *Propositions advanced by the* CHANCELLOR *in the opinion delivered by him :*

All the *partners* of a firm are bound by a note made by one of them in the name of the firm, although it was made for a special purpose, and fraudulently put into circulation; or, although the maker of the note had *lent the credit of the firm* without the knowledge and consent of his copartners, where the note before maturity comes into the hands of the holder for a valuable consideration, in the ordinary course of business, and there is nothing in the nature of the transaction to apprize him that it was not given for a copartnership debt.

It is competent to one of several *partners* by an instrument *under seal* to authorize a third person to *discharge* a debt due to the firm.

Where it is not necessary to give validity to a contract executed by an agent that it should be *in writing*, the constituent is bound by an agreement of his agent, which is in fact made for his benefit, although he is not named ; and even where it is necessary that the contract should be in writing to give it validity, the constituent is bound by it if it appear in any part of the instrument that it was intended to be executed by his agent for him in the character of agent merely. But where it is necessary that the instrument to be executed by an attorney under a power, should operate as the *deed* of the constituent *under seal*, to convey an estate or interest, or to release a right, without a full compensation received or secured to be paid, it must not only appear to have been executed by the agent for the principal, but it must be executed *in his name*, so as to make it his deed; though if the deed be actually made in the name of the principal, and purports upon its face to be his deed, and not the deed of the attorney or agent for the principal, merely, it is not necessary that a particular form of words should be used in the execution thereof.

The CHANCELLOR also suggests a doubt whether the deed from *Hill* to *Mather*, as set forth in the statement of the case, being a *deed in trust* to *sell* or *mortgage* lands for the payment of debts, is not void as made upon *trusts* unauthorized by the revised statutes. *Senator* VERPLANCK, upon this point expresses the opinion that the deed is valid, either for passing the estate, or as a *power in trust.*

ers as the *makers* of a promissory note for $3000, dated 27th July, 1835, payable to Samuel S. Hill, twelve months after date. The defendants were partners in trade, and the note was signed in the partnership name, " Thomas Evans & Sons," by *Thomas Evans*, the senior partner. The defence set up was the following : On the 11th December, 1835, the plaintiffs united with several others, merchants of the city of New-York, in executing a *power of attorney* to Charles B. Granniss and Henry M. Meade, authorizing them to demand and receive from *Hill*, the endorser of the note in question, all sum and sums of money due, owing and payable to them, and, on receipt of the same, to execute acquitances and discharges. This power of attorney was executed by *Marcus Spring*, one of the plaintiffs, by affixing thereto his own name and the name of his firm, thus : " Marcus Spring for Wells & Spring," and adding to the signature a *seal*. This power of attorney was received in evidence, though objected to by the plaintiffs' counsel. The defendants next offered in evidence an instrument in writing, executed by Granniss & Meade, bearing date 12th December, 1835, whereby they acknowledged to have received of *Hill*, the endorser of the above notes, $9000 *in money ;* in consideration of which, they promise to surrender to Hill, without delay, such notes as had been given to him by different individuals *for his accommodation*, and which had been endorsed by him, *in lieu* of which they stated they had received his individual notes ; also, they promised to discontinue all suits upon such notes, and to refrain from causing any costs to be made on the same. They also stated that they were to receive, *whenever they should require the same,* all transfers of real estate made by *Hill*, and particularly a transfer made to H. Mather, " for the payment of the respective notes." This instrument was executed thus : " Cha's B. Granniss, L. s. Henry M. Meade, L. s." Its admission in evidence was objected to, and rejected by the judge. The defendants also offered in evidence the transfer to Mather, referred to in the instrument executed by Granniss & Meade. It was a *deed in trust*, executed by *Hill* to *Henry Mather*, bearing date 24th October,

1835, conveying sundry parcels of land, and was accompa-
nied by a *declaration of trust*, executed by *Hill* and *Mather*,
specifying the objects of the conveyance : which were, that
Mather should offer certain parcels of the property to certain
specified creditors in payment of their demands ; and on their
refusal to accept the same, to *sell* or *mortgage* the property,
and appropriate the proceeds to the payment of the debts.
Among others, certain parcels of the property were appro-
priated to the payment of the *note of* $3000 *of Thomas
Evans & sons.* The defendants, in connection with those
instruments, offered to prove by *parol*, that the deed from
Hill to Mather was the *transfer* referred to in the instru-
ment executed by Granniss & Meade ; that the note in con-
troversy was an *accommodation note*, given by the defend-
ants to Hill without consideration, and was the identical
note specified in the declaration of trust ; and that *Mather*
had always been ready and willing to execute to Granniss
& Meade a conveyance of the real estate specified in the
deed of trust, but had never been requested so to do : all
which evidence was objected to by the plaintiffs, and re-
jected by the judge. The defendants further *offered* to
*prove*, that the instrument executed by Granniss & Meade
was executed under and in pursuance of the power of at-
torney given to them, and *that the plaintiffs received their
proportion of the* $9000 specified in the instrument ; which
evidence was objected to by the plaintiffs' counsel, *so far*
as the same tended to prove that the instrument executed by
Granniss & Meade *was obligatory upon the plaintiffs as a
release.* The objection was sustained, and the evidence re-
jected ; the judge, however, ruled that if the defendants de-
sired to prove the *payment of any money* to the plaintiffs as
a credit or partial payment, or that the plaintiffs *had re-
ceived a conveyance of land,* or any other thing, they were
at liberty to do so ; and that, for that purpose, but not for
the purpose with which it was offered by the defendants, the
*deed to Mather* and the *declaration of trust* were admissible
in evidence. Under which decision, however, no evidence
was given by the defendants. The defendants finally offer-
ed to prove that the note in question was made by *Thomas*

*Evens*, one of the partners of the firm of *Thomas Evens &* *Sons*, in the name of the firm, *for his individual benefit* : that it was made in *blank*, as it respected the amount, and placed in the hands of *Hill* for the purpose of borrowing money thereon, for the individual benefit of *Thomas Evens*, and that Hill had no authority to fill the blank, or issue the note for any other purpose ; and that, in violation of the trust confided in him, he passed the note to the plaintiffs for *goods purchased of them for his own benefit*, without the knowledge, consent or approbation of the defendants, or either of them ; the defendants conceded that the plaintiffs received the note from Hill, before its maturity, for goods sold by them to Hill, and that they were holders for value : which evidence was objected to by the plaintiffs, and rejected by the judge. The counsel for the defendants insisted upon the state of facts lastly offered to be proved, 1. That the note never had legal inception or existence ; and 2. That at all events, the plaintiffs could not recover without proving that *all the defendants* had assented to the making of the note *in the name of the firm*, or that it was made for the benefit of the firm, and within the scope of the partnership business. The jury, under the direction of the judge, who charged them that the plaintiffs *were entitled to recover*, found a verdict for the plaintiffs, for the amount of the note and interest. The defendants having excepted to all the decisions of the judge, except the first, and to the charge given to the jury, applied to the supreme court for a new trial, which was denied, and judgment rendered for the plaintiffs. See opinion delivered in that court, 20 *Wendell*, 254. The defendants thereupon sued out a writ of error. The case was argued in this court by

*J. A. Collier*, for the plaintiffs in error.

*J. S. Bosworth*, for the defendants in error :

*Points relied upon by the plaintiffs in error.*

I. The Messrs. Evens, defendants below, stood as between them and Hill, in the relation of sureties only ; the

note being an accommodation note, and Hill the principal debtor; and if the holders of the note made an arrangement to discharge Hill from his liability, the sureties were of course discharged. 5 *Wendell*, 85.   17 *id.* 214.   9 *id.* 172. 13 *id.* 375.   11 *id.* 312.   8 *East*, 576.   *Chitty on Bills, Phil. ed. of* 1826, 301, 347.   *Selw. N. P. 4th ed.* 348.   16 *Johns. R.* 41, 70.   13 *id.* 353.   6 *Mass. R.* 85.   11 *Vesey*, 410.   3 *Kent's Comm.* 1*st ed.* 77.   6 *Mass. R.* 430.   10 *Johns. R.* 224, 225.   5 *Mass. R.* 543.   3 *Conn. R.* 213. 1 *Cowen*, 49.   2 *R. S.* 354, § 32.   5 *Johns. R.* 268, 386. 3 *Johns. Cas.* 243.   2 *Johns. R.* 345.   4 *Wendall*, 360. 3 *id.* 66.   7 *Cowen*, 224.

II. The deed and declaration of trust, and the release of Granniss & Meade, offered upon the trial, were properly admissible in evidence, and ought not to have been rejected by the circuit judge.  1. The power of attorney was ample, and gave to Granniss & Meade full power and authority to compound, to give discharges, and generally to do all things "as fully and amply, to all intents and purposes, as Wells & Spring could do if personally present, or as if the same required more special authority, and thereby ratifying and confirming all that the said attorney should do."  2. The release acknowledged the receipt of $9000 in cash, and the individual note of Hill, and recognized and provided for the acceptance of the lands conveyed to H. Mather, for the benefit of Wells & Spring and the other creditors, and stipulated to give up to Hill the very note in question, and was sufficient proof of *accord and satisfaction.*  These papers ought to have been admitted either as part of the history of the transaction, or as evidence of what had been done, and what had been received, by the agents of the plaintiffs below.   *Story on Agency*, 137 *to* 142, 143, *n.* 145, 150, 151, 152, 154, *n.* 2, 202, 239, 245, 246, 247.   1 *Gall.* 630.   9 *Cranch*, 453.   8 *Pick.* 56.   6 *Wendell*, 284.   9 *Conn. R.* 545, 555, 556.   13 *Wendell*, 488.   3 *Johns. R.* 70.   *Paine's Cir. R.* 252.   *Pothier on Ob. n.* 82.   10 *Wendell*, 87, 399. 16 *Mass. R.* 461.   2 *Brod. & Bing.* 452. 3 *Chit. on Com. & M. L.* 197, 198.   12 *Wendell*, 413, 417.   15 *Johns. R.* 1. 16 *id.* 86, 89.   2 *Johns. Ch. R.* 429.   8 *Cowen*, 191.   2

*Stark. Ev.* 24, 34, 594, 595.   1 *Strange*, 537.   1 *Esp. R.*
142.   2 *id.* 511.   2 *Kent's Comm.* 150, 631.   8 *Greenl.* 442.
*Wright's Ohio R.* 72.   *Ohio Cond. R.* 571.   4 *Rawle*, 294.
4 *Taunt.* 511.   5 *Watts' R.* 490, 17 *Wendell*, 40.   18
*Johns. R.* 122.   12 *id.* 444.   18 *id.* 126.   5 *Moore & Payne*,
549.   11 *Johns. R.* 70.   8 *Pick.* 44.   *Cowp.* 56.   2 *Campb.* 24.

III. The parol evidence, offered on the trial, that the note
in controversy was an accommodation note given to Hill
without consideration, and one of the notes specified in the
declaration of trust and in the release of Granniss & Meade,
was proper and ought not to have been rejected.   *Johns.
Dig. tit. Evidence*, 11.   14 *Johns. R.* 210.   20. *id.* 239.
7 *Cowen*, 48.

IV. The evidence offered on the trial, that the plaintiffs
below received their proportion of the $9000, ought to have
been admitted, and was improperly rejected by the circuit
judge.   4 *Wendell*, 465.   6 *Dana*, 114.   *Wright's Ohio
R.* 553. 662.   5 *Moore & Payne*, 549.   1 *Johns. Cas.* 110.
7 *Cowen*, 60.   7 *Watts' R.* 121.

V. The decision and charge of the circuit judge, that the
plaintiffs were entitled to recover the amount of the note and
interest, was erroneous.

*Points relied upon by the defendants in error:*

I. The instrument of December 12, 1835, executed by
Granniss & Meade to Hill, is in terms and legal effect their
deed, and not the deed of Wells & Spring.   Granniss &
Meade covenant in their own names, and in their own be-
half.   They do not even designate themselves as agents, or
allude to Wells & Spring as interested in, or to be affected
by it.   It was therefore properly rejected.   A deed or other
written contract to be obligatory upon a principal, when
made by an agent, must be made and executed in the name
of the principal.   If not made in the principal's name, it is
not his contract.   It cannot be declared upon as his con-
tract, nor be shown to be such by any evidence extrinsic to
the deed itself.   *Moor*, 70.   *Comb's case.* 9 *Rep.* 76, 77.
*Bogart* v. *De. Bussy*, 6 *Johns. R.* 94.   *Stone* v. *Wood*, 7
*Cowen*, 453.   *Spencer* v. *Field*, 10 *Wendell*, 86.   *Elwell* v.

*Shaw,* 16 *Mass. R.* 42. 1 *Hill's Law R.* 155. *Appleton* v. *Binks,* 5 *East,* 148. *Mood. & Malk.* 450. *Ducary* v. *Gill,* 5 *Monroe's R.* 562, 566 *to* 570. Bibb, Ch. J. dissented, on the grounds that *in the deed,* the attorneys professed to act *as such,* and to convey the *interest* of the *principal. Stinchfield* v. *Little,* 1 *Greenl.* 231. *Coburn* v. *Ellenwood,* 4 *N. Hamp. R.* 99. *Lock* v. *Alexanders,* 1 *Hawk. R.* 412. 2 *id.* 155, *S. C. Harper* v. *Hampton,* 1 *Harr. & John.* 622, (708,) *and see Smith's lessee* v. *Perry, id.* 706. No different rule appears to have been adopted in any state of the union.

II. The same rule is applied to the *composition and release of a debt.* If the release is not in the name of the principal, it is void. *Moor,* 818. *Clark's lessee* v. *Courtney,* 5 *Peters,* 319,

1. No instrument in writing can be substantially varied, or contradicted in its legal import, *except a mere technical receipt. Kellogg* v. *Richards,* 14 *Wendell,* 116. The deed of Granniss & Mead contains covenants *to do* various acts *in futuro,* and to abstain from doing others, and is in all respects unlike a mere receipt. "Since a bill, note or deed may be concluded by an agent, such instruments, when so concluded, if they express to be made for the principal, will bind him, but otherwise not, *because no evidence will be admitted to control their purport. Comyn's Dig. Attorney, c.* 14, *U.* 3.

2. Such testimony is not only contrary to the statute of frauds, but to the maxims of the common law. The general rule, that such evidence is inadmissible, "*ought not to be a subject of discussion.* It is as well grounded in reason and policy as in authority." 1 *Johns. Ch. R.* 429. *Stackpole,* v. *Arnold,* 11 *Mass. R.* 27. *Arfridson* v. *Ladd,* 12 *id.* 173. A written contract, signed and sealed, merges in itself, all preliminary conversations, all understandings, and intendments of the parties. It becomes the test of the parties' liabilities. It is the sole evidence of their rights growing out of the transaction of which it speaks. It is the parties' record, their protection against fraud, the uncertainty of memory, the death or perjury of witnesses. That persons not

named, or alluded to in it, can be shown by *parol,* to be the principals, and then be charged by *force of the instrument itself* in all respects as if they were the persons actually executing it, is too preposterous to be argued. Such a doctrine would overturn all authority, violate common sense, destroy all certainty and security in human transactions, and open the door to frauds and perjuries. *Erwin* v. *Sanders,* 1 *Cowen,* 249. *Austin* v. *Sawyer,* 9 *id.* 39. *Pattison* v. *Hull, id.* 747, 753. *And see cases cited in* 1 *Cond. Rep. Sup. C. U. S.* 171, *note.*

III. The circuit judge expressly permitted the defendants to show, and the plaintiffs made no objection to their showing, a payment in whole or in part, of the note in suit, either by an actual receipt by Wells & Spring of a part of the $9000, or by a conveyance of land, or any thing else. The defendants below declined doing this, and insisted on having the instrument admitted in evidence as the act and deed of Wells & Spring, and as operating *suo proprio vigore,* as a full compromise and discharge of the note in suit. The circuit judge ruled that the matters offered to be proved were not admissible *for such a purpose;* but might be proved to establish a payment; the defendants declined going into the evidence with that view. This was their own fault. They knew no such defence could be made out of the true facts of the case. Hence it became necessary for them to conclude and estop Wells & Spring from recovering, by force of the deed itself, without regard to the truth of the case. If this effect could not be given to it, they had no defence.

IV. The deed of December 12 was also properly rejected, because the power of attorney is *special.* The creditors only authorize Granniss & Meade to sue for, compromise and discharge debts owing to and detained from them " by Samuel S. Hill." This note was in Wells' & Spring's hands a debt against Thomas Evans & Sons only. They parted with goods on its credit. It had some eight months to run when the deed of Dec. 12 was executed. The makers were *perfectly responsible.* Hill had failed in October. Why

should Granniss & Meade conjecture either from the *terms* of the letter of attorney or the pecuniary condition of Evans & Sons, or from any other facts appearing in the case, that they had power to effect Wells' and Spring's rights as to this note ?   Why compromise a demand perfectly good ? Before it could become Hill's debt, or he could be chargeable on account of it to Wells & Spring, the makers must fail to pay the note, and he must be charged as endorser. It was not to compromise notes against *third persons* which these creditors had bought that Granniss & Meade were made their attorneys, but to adjust and settle the debts " due owing and payable (to them) and *detained from them by Samuel S. Hill.*"   All the general grant of power is declared to be given " for that purpose."   Hence if the deed had been executed in the name of Wells & Spring, it could have no operation on the note in suit.   *Rossiter* v. *Rossiter,* 8 *Wendell,* 494.

V. The defendants in error having been admitted to be *bona fide* holders of the note for value, in the usual course of trade, their title could not be impeached by the evidence of fraud in the inception of the note offered by the defendants below ; and that evidence was therefore properly excluded.

After advisement, the following opinions were delivered :

By the CHANCELLOR.   It was conceded upon the trial that the plaintiffs were the *bona fide* holders of the note in question, for a valuable consideration ; having received the same from Hill, the payee, in the due course of business, in payment for goods delivered to him at the same time. Therefore it was no defence whatever to the suit, that Hill had received the note for a special purpose, or that one of the partners had lent the credit of the firm without the knowledge and consent of his copartners, as there was nothing in the nature of the transaction to apprize the plaintiffs that it was not a note given by the defendants to Hill, for a copartnership debt.   It cannot be denied that the judge

at the trial gave to the defendants the utmost latitude of proving the payment of any money to the plaintiffs, or to their agents, or any land or other thing as a credit or payment, either by Hill or by any other person ; and that he only meant to exclude the proof offered as legal evidence of a *release*, or as a good *accord and satisfaction* of the whole debt. The decision, too, was made in terms which it was impossible for the counsel for the defendants to misunderstand. It is evident, therefore, that the defendants were unwilling to have a share of the $9000 applied on this note : either because they wished to retain a right to proceed in the name of Hill against Granniss & Meade, upon the supposition that they had rendered themselves *personally* liable under their agreement of the 12th of December, 1835 ; or, which is more probable, that they were conscious that no part of the $9000 was received on account of this particular debt due to the plaintiffs. The only real question for consideration, therefore, is whether the evidence offered was sufficient to establish *a technical release* of the debt, or an *accord and satisfaction* thereof.

As a release, it certainly was not valid, either in form or in substance. I am inclined to think the learned judge who delivered the opinion of the supreme court, is right in supposing that one of two copartners can execute a power under his own seal, authorizing his attorney to release a debt due to the firm. But there was no evidence offered in this case to show that the power of attorney executed by Spring, for himself and his copartner, was intended to apply to this note ; which, at the time of the execution of that power, was not a debt *due, owing and payable to the firm of Samuel S. Hill,* and to such debts alone the power applies. There was not even an offer to show that Spring, at the time he gave that power, knew that this was an accommodation note, so that Hill would in equity be bound to pay the note to relieve the drawers although he might not be charged as endorser. Besides : as a power to execute a release under seal, which will discharge a debt without actual satisfaction, must itself be under seal, a release which was not authorized by the power under which it was intended to

be executed, cannot be made good by a subsequent parol ratification thereof. *Story on Agency*, 237, § 242.

Again : The instrument offered in evidence in this case as a release of the debt was not executed in the names of the plaintiffs, or of either of them, or by Granniss & Meade as their agents or attorneys ; nor were the plaintiffs named, or even alluded to in that instrument. Where a contract is not necessary to be in writing to give it validity, the constituent may be bound by an agreement of his agent which is in fact made for his benefit, although he is not named at the time, and sometimes where he is not known to the party with whom his agent contracts ; and even where it is necessary for the contract to be in writing to give it validity, the constituent may be bound by it, if it appear in any part of the instrument that it was intended to be executed by his agent for him, in the character of agent merely. *Story on Agency*, 143, § 154, *and cases there cited.* But where it is necessary that the instrument to be executed by an attorney under a power should operate as the deed of the constituent, under seal, to convey an estate or interest, or to release a right, without a full compensation received or secured to be paid, it must not only appear to have been executed by the agent for the principal, but it must be executed in his name, so as to make it his deed. (*a*) Though, if the deed is actually made in the name of the principal and purports upon its face to be his deed, and not the deed of the attorney or agents for the principal merely, it is not necessary that a particular form of words should be used in the execution thereof. *Wilkes* v. *Back*, 2 *East's R.* 142. *Appleton* v. *Burks*, 5 *id.* 148. A parol agreement for the release of a debt without satisfaction, or upon receiving a part thereof only, from the debtor, is not valid, either at law or in equity, without a release under seal ; and parol evidence to show that an instrument which is not a release was intended to be such, is inadmissible. *Harrison* v. *Wilcox*, 2 *Johns. R.* 448. *Acker* v. *Phoenix*, 4 *Paige's R.* 305. The offer in this case, therefore, to prove by parol that the

---

(*a*) See *The Bank of the Metropolis* v. *Grettseplick*, 14 *Peters' R.* 19.

instrument executed by Granniss & Meade was intended
to be something different from what, upon its face, it purpor-
ted to be, was entirely inadmisssible for the purpose for which
it was offered; and the evidence was properly rejected by the
judge.

Nor was all or any of the testimony offered in this case
sufficient to show *an accord and satisfaction* of the debt
for which the suit was brought. If the deed from Hill to
Mather, when taken in connection with the declaration of
trust executed at the same time, was not absolutely void, as
made upon trusts not authorized by the revised statutes, so
as to convey no interest whatever to the trustee, Mather
was not bound to convey the land to these plaintiffs or to
any other persons for their benefit. Neither had he any
right to do so, as it would have been a direct violation of
his trust. By the terms of that trust, he was to convey to
the holders of this note of Thomas Evans & Sons, the four
parcels of land described in the declaration of trust, only in
case such holders would receive the lands in *full payment.*
If they should decline taking the same in full payment and
discharge, then they were to be offered to Evans & Sons,
upon their taking them in full satisfaction of their liability;
and if they declined taking the lands, and releasing Hill from
his liability on the note, the trustee was to *sell* or *mortgage*
such lands for the benefit of the class of creditors named
therein, with a further trust as to the surplus, to indemnify
Sanford and pay all Hill's other creditors. Hill, therefore, had
no right to change the nature of these trusts afterwards, espe-
cially by parol, so as to authorize a transfer to these plaintiffs
or to their agents *in part payment* of this note; or rather as
security for the new note, which he was to give for the bal-
ance of the debt when this note was given up. The verbal
agreement, therefore, which this instrument was probably in-
tended to be evidence of, even if it had not been void, so far
as related to the conveyance of the lands under the statute of
frauds, was a mere executory agreement amounting to an at-
tempted accord, but no satisfaction of the debt. The law is well
settled, that an accord without satisfaction is no bar to the

Evans v. Wells.

recovery of the debt. *Fitch* v. *Suttton*, 5 *East's R*. 230. 1 *Rolle's Abr. tit. Accord, pl.* 11, 12, 13. 9 *Coke's R. by Thomas & Fraser*, 79, *b., note E*. If the conveyance to Mather was valid, there will probably be no difficulty in the plaintiffs in error getting the lands, or the proceeds thereof for their indemnity, in conformity with the provisions of the trust; and if any part of the $9000 was intended to apply towards this debt, they would have had the full benefit thereof, if they had not declined to avail themselves of the offer which was made to them upon the trial.

1 think, therefore, that the judgment of the court below was not erroneous, and that it should be affirmed.

By Senator EDWARDS. The principal question in this case is, was the instrument executed by *Granniss & Meade*, admissible in evidence for the purposes for which it was offered by the defendants' counsel? I have no doubt that the power of attorney to Granniss & Meade was sufficient to enable them to make the compromise and to release the note; for they were authorized by it to do and perform every thing proper and necessary in the premises, as fully and amply to all intents and purposes as the parties themselves could do were they personally present, or as they might, if the same required more special authority; but the question is, did they execute the release in due form, to discharge the note in controversy? The counsel wished to introduce the release to show they were acting in the capacity of *agents*, or attorneys, and thereby bound their principals, but the release shows no such thing. It shows they were acting in their individual capacity, and their principals are no where even named in the release. The agent, to bind the principal by deed in writing, must execute the deed in the name of the principal. There is no law better settled, or more uniformly declared in the whole code of jurisprudence than this, and none that has so uniformly received the sanction and approbation of the various judicial tribunals of this country. *Combs' case*, 3 *Coke*, 76, *pt.* 9, is the first case upon this point, and has been quoted with approbation by almost every judicial tribunal to which this subject has since

been presented. In that case it was resolved by the court, "That where any one has an authority as attorney to do any act, he ought to do it in his name who gives the authority ; for he appoints the attorney to be in his place, and to represent his person, and, therefore, the attorney cannot do it in his own name, nor as his proper act, but in the name and as the act of him who gave the authority." In *Elwood* v. *Shaw*, 16 *Mass. R.* 46, the court say the authority of *Comb's case* is not at all shaken by modern decisions ; all concur in laying it down as an indispensable requisite to give validity to a deed, executed by an attorney, that it should be made in the name of the principal. In *Welsh* v. *Parish*, 1 *Hill's R.* 161, the court say, *Comb's case* seems to have laid the foundation for the rule which has been followed ever since. See also *Stone* v. *Wood*, 7 *Cowen*, 453 ; *Spencer* v. *Field*, 10 *Wendell*, 87 ; *Colburn* v. *Elwood*, 4 *N. Hamp. R.* 102 ; *Harper* v. *Hampton*, 1 *Har. & John.* 710 ; *Lock* v. *Alexanders*, 1 *Hawk's R.* 412 ; *Comyn's Dig. tit. Attorneys, C.* 14 ; *Frontin* v. *Small*, 1 *Ld. Raym.* 14, 18, *Wilkes* v. *Back*, 2 *East*, 142 ; *Story on Agency*, 137 ; 2 *Kent's Comm.* 631, *n. c.* Numerous other cases and authorities might be referred to, but it is needless to multiply them in support of a principle of law, so well settled and universally known.

As the instrument itself, therefore, was not admissible as legal evidence to bind the principals, ought the parol testimony which was offered to explain it, to have been received? This was a written instrument under seal, a deed, one of the most sacred instruments known to the law. What was the object of the parol testimony ? It was to show that a deed which did not purport to be executed by Granniss & Meade *as agents*, was so executed by them; that a deed which did not profess to bind their principals, did bind them ; and thereby convert the instrument under seal into a totally different one, and thus contravene one of the most sound and salutary rules of evidence. There is no rule better settled than that which declares that parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement, and especially one un-

der seal. In the case of *Stephens* v. *Cooper,* 1 *Johns. Ch. R.* 429, Chancellor Kent says: " This general rule is certainly not to be questioned or disturbed. It ought not to be a subject of discussion." *Stackpole* v. *Arnold,* 11 *Mass. R.* 28. *Kellogg* v. *Richardson,* 14 *Wendell,* 116. Again : it is said in *Comyn's Dig. tit. Attorneys,* C. 14, *n.* 3, that " since a bill or note may be concluded by agent, such instruments, when so concluded, if they express to be made for the principal, will bind him; but otherwise not, because no evidence will be admitted to control their purport." For these reasons it clearly appears to me that the court was right in excluding the parol testimony offered to explain the release, or instrument, executed by Granniss & Meade.

From the view I have taken of this case, as I do not consider Hill discharged by the instrument executed by Granniss & Meade, it is unnecessary to consider the first point raised by the counsel for the plaintiffs in error ; nor is it necessary to consider the third point raised by him under his offer to prove that the note was an accommodation note, lent to Hill without consideration, inasmuch as the note was transferred to *bona fide* purchasers for a valuable consideration.

I am for affirming the judgment of the supreme court.

By Senator VERPLANCK. I think the judge at the trial, and the supreme court on the motion to set aside the verdict, were right in considering the sealed instrument executed by Granniss and Meade, as insufficient in itself, as a release of the debt binding upon those whom they are alleged to have represented as principals. It was executed in their own names and without any mention of the plaintiffs below as their principals. The doctrine is well settled that every written contract made by an agent, should, in order to be binding upon the principal, purport on its face to be made by him, and should be executed in his name and not in the name of his agent; this is held most strictly as to all instruments under seal. The decisions carry this rule to a greater length than would now be deemed necessary or expedient. If the question were now within the discre-

tion of the courts, greater latitude would doubtless be allowed, but as the law stands, this strictness as to sealed instruments can only be relieved by legislative interference, as has been done in some of the states of the union.

If from the circumstances of the case this transaction requires for its validity the legal and technical operation of a sealed instrument, so that this release, (supposing it had been made in the name of the presumed principals,) could have been good only under seal, then this rule unquestionably applies in all its rigor ; and it would require the solemnity of a deed to give it efficacy, if the facts were that the undertaking on the part of the party to be discharged had not been executed, or if it was meant as a release of a larger sum upon payment of a smaller. 20 *Johns. R.* 78. But it has been urged that the seal and formality of a deed were here mere surplusage, and that rejecting the seal, the instrument was merely a paper in the nature of a receipt, and entitled to be more leniently construed. The courts, whilst they have adhered with little relaxation to the literal rule of the old law, in respect to bonds, conveyances, or other instruments to the legal operation of which the formality of a deed is essential, have given a much more liberal exposition of less formal writings, and more especially to those intended as the evidence of ordinary commercial transactions. "In such cases in furtherance of the public policy of encouraging trade, if it can upon the whole instrument be collected, that the true object and intent are to bind the principal, and not merely the agent, courts of justice will adopt that construction of it, however informally it may be expressed." I state the rule as it has been deduced by Judge Story, in his *Treatise on Agency*, ch. 7, § 154, from numerous cases decided within the present century, since the beginning of which this more liberal interpretation has been forced upon courts by the necessities of trade and the gross hardship of the old doctrine when applied to informal and hastily written papers. On examining these authorities it will indeed be found, as the learned commentator says, by no means "easy to reconcile all the cases in the books on this subject." Nevertheless, I believe he has

Evans v. Wells.

stated the true principle to be deduced from them, and I would willing aid in lending the authority of this court to establish so salutary a rule.

Nor should I hesitate to apply the same useful rule of interpretation of sealed instruments, whenever the seal was not absolutely essential to their legal efficacy, that is to say, whenever that was undertaken to be done by deed, which could as well be done by any written evidence of a simple contract. But the difficulty of the present case is, that allowing this rule otherwise to apply, the stipulation or release is so drawn, that it cannot be inferred, from the instrument alone, that its intent was to compromise on behalf of the *plaintiffs* below, and that it was not merely a special undertaking of Granniss and Meade, to arrange the affairs. Nor is this made more clear by comparing the instrument with the power of attorney, under which they were authorized to compromise with Hill, for it is by no means apparent there, that such a contract as this was within the power granted. It is even possible that other facts might show this to have been an independent contract on the part of these agents. As a release, therefore, obligatory in inself upon the plaintiffs below, I think the instrument invalid. It is binding personally on the agents who signed it, not upon the principals who can be known only from conjecture or circumstantial inference.

It strikes me, however, that there is another and different view to be taken of this case. So far as we can judge from the evidence offered and excluded as well as that admitted, it may have been that there was an actual compromise made by these attornies with Hill, and a stipulation to discharge and return all the notes endorsed and used by him for his own accommodation, of which the note on which the suit was brought was one. This compromise, whether within the authority given and power confided to the agents or not; whether appearing on the face of it to be made by the principals or not, if afterwards assumed and ratified by the principals, would be good. Such ratification would be proved by accepting from Hill the several proportions of the money paid by him, with knowledge of

the stipulation entered into by their agents. Whenever the principal with knowledge of the facts ratifies the acts of his agent, he will be bound as fully by his contract, as if he had originally given him direct authority for that very purpose. The ratification relates back to the very beginning of the transatcion. " A subsequent sanction," says Chief Justice Best, " is considered the same thing in effect, as an assent at the time." 4 *Bing.* 722. Now this ratification may be evidenced by acts as well as by words. Thus, if an agent employed to purchase goods at a limited price, exceeds his instructions, and the principal with full knowledge of the facts, receives the merchandize, it is presumed that he intends to ratify the transaction. *Story on Agency,* § 253 *and cases cited in note* 4. So if an agent sells goods below his limits and send an account to his principal who draws for the amount of sales; this amounts to a ratification of the sale. 4 *Mason* 296. See also *Soames* v. *Spencer,* 1 *Dowl. & Ryl.* 32. If then the plaintiffs below received their share of payment on their agent's contract, or compromise, knowing what it was, they affirmed the whole, and made it their own; for it has been held in repeated decisions ever since the old case of *Wilson* v. *Poulter,* 2 *Str.* 859, that the principals cannot affirm the acts of their agent in part and avoid the remainder. I am therefore of opinion, that it was competent for the defendants below to introduce evidence to prove that the plaintiffs had received their proportion of the monies paid by Hill, with such probable knowledge of the terms on which they were paid, as would ratify the accord made by Granniss and Meade; that it was next competent for them to show that these terms had been complied with by Hill; and the release, as it is called, would then be good evidence of what these terms were.

I am aware that it can be objected to this view of the ratification of the compromise by the acts of the parties, in receiving partial payments or otherwise, that it is questionable whether a deed can be ratified by any mere acquiescence or act short of a similar deed. But I apply to the present case the distinction already mentioned, and which is pointed

out by the high authority I have cited, that the strict rule as to-sealed instruments applies only when the seal and formality of a deed are essential to the legal effect of the writing. When it is not so, the instrument is to be treated as any other written stipulation. But if this should be doubted, there is yet another view which is sanctioned by much and strong authority. The ratification is not of the mere instrument itself, but of the agreement of which the instrument is the evidence. This distinction between the effect of deeds, notes, bonds and other written instruments in themselves, and as evidence of contracts, is familiar to our law. They may be void in themselves and yet good to prove a loan or a contract. The distinction was originally taken by Lord Mansfield and his associates, in *Robinson* v. *Bland*, 2 *Burr.* 1080, and has since been often adopted in our own courts. Thus it was held in the supreme court and in this court, in the *Utica Insurance Co.* v. *Kip*, 8 *Cowen*, 25, that certain notes were void as negotiable paper, yet that the loan of which they were evidence was not void. So again, in 4 *Wendell*, 654, the court say, " A note, though illegal and incapable of being the foundation of an action, may still be used in evidence. It is void only as a security, but competent evidence under the money counts." On the same ground, in a late English case, Bayley, J. said, " if there be a debt independent of the deed, the amount of which is to be ascertained by the deed, the existence of the deed will not prevent the party recovering that debt upon the common money counts." Here the contract itself is ratified, not the deed as such, though the terms of the contract are ascertained by the instrument under seal.

This view of the law, without contradicting former decisions, appears to me calculated to produce a just and equitable result, not only in the present instance but in many similar cases. There is but one objection to it of much weight, and that, though apparently supported by authority, will, I think, upon examination, prove unsound. It is said by Judge Cowen, " The legal effect of the instrument was to bind Granniss & Meade personally, and evidence that it was intended to bind others would violate the rule which forbids

the varying of a written instrument by proof *aliunde.*" The general rule unquestionably is, that " parol evidence is inadmissible to contradict or substantially vary the legal import of a written agreement." 1 *Johns. Ch. R.* 425. Or to use the language of a more recent decision, " A written contract, with or without a seal, cannot be contradicted or varied by oral testimony." This is certainly true, and yet the inference of Judge Cowen does not follow. As respects the parties to the written contract, it is invariably true that oral testimony shall not be admitted to discharge the liability so incurred, or to vary the terms or conditions of the bargain. All prior negotiations between the parties are presumed, and reasonably so, to be merged in the written stipulations. But such written stipulations do not of necessity exclude parol testimony as to any rights of either party, growing out of the same transaction but against a third party. There are many cases arising in every day's affairs where justice and policy as well as judicial authority require that *principals* should be charged on parol evidence, if the creditor elect so to do, although a contract had been written and signed by an *agent* so as to make himself *personally* liable to the same creditor and in the same transaction. Thus an agent who exceeds his powers and in that transaction draws a bill of exchange, is liable on his personal undertaking, yet parol testimony is admissible to show that the principal ratified such transaction, and he too becomes liable on the contract. *Shiras* v. *Morris,* 8 *Cowen,* 61. *See also Rossiter* v. *Rossiter,* 8 *Wendell,* 494. Again : an agent, buying without disclosing his principal, and giving a bill of exchange upon which his principal's name does not appear, is liable himself on his bill, but the principal may still be liable also for the goods bought, if on parol proof the jury are warranted to say that the goods were not sold on the exclusive credit of the agent. 10 *Wendell,* 271. On the other hand, where the seller of goods has elected to give credit to an agent instead of the person for whom he bought, parol evidence has been allowed to show on whose credit the articles were bought, in the form of a written order from the principals, enumerating the articles and stating the terms of payment

This was so held in a very leading case on the law of agency, *Paterson* v. *Gandasequi,* 15 *East,* 62. So also it is held, both in England and here, that if the *master* of a ship, by a written contract in his own name, contract for repairs, he is of course liable on his written undertaking, and parol proof of ownership will also make the *owner* liable. The same rule applies to a bottomry bond, to charter parties, and to bills of lading. *Abbot on Shipping, part* 2, *ch.* 2, 3. 3 *Kent's Comm.* 162, 163. In the common case of a charter party, executed by the *master* of a ship, it is not doubted that his *owner* is bound by the contract in some form or other; but it is a little doubted that the master may be sued on it as his own deed. Indeed nothing is more common than for a contract to be made by which the agent is personally bound, and which yet is, *ex consequenti,* binding on the principal also, although not a direct party to the instrument. *Story on agency,* § 278. In these and numerous other cases, oral proof of interest, of ownership or of ratification, which would not be admitted to explain away the written agreements or negotiable paper of an agent thus binding himself, will yet be admitted to charge some other person with a similar liability. The written instrument is held to merge all former conversations, negotiations and explanations between the parties privy to it, but it should not and does not control the rights of either party against another person responsible on the same account, with whom no written agreement has been directly made. The writing is to such third person a negotiation *inter alios,* and can only be received as inferential evidence touching his liabilities, not as exclusive of all other testimony. The law will not permit parties to contradict, by external evidence, their *own* written contract. This is a sound principle of legal policy, but surely it does not follow from this that the written contract between A. and B., which is conclusive as to them, must be of necessity so, as to the proof of any rights or claims of A. against C., merely because they grow out of the same business. Numerous as are the authorities and decisions for the exclusion of parol evidence offered in order to discharge the liability of persons bound by their own written agreement,

I have found but one, 11 *Mass. R.* 27, which extends the doctrine so as to make the written evidence of one man's liability on a contract, exclusive of all parol testimony of the liability of another on the same matter. This, as I have already shown, is contradicted by many well settled decisions, and I conceive that the equity of the present cause demands that it should be added to the number.

On the whole of the matter, my opinion is, that if the defendants below could show by parol proof that the plaintiffs had ratified, or assumed by their acts or assent, the bargain, of which the release under seal signed by the agents themselves contained the terms, such proof should have been admitted ; that the release itself should be admitted in evidence of the terms of the compromise so ratified or assumed ; and that it was then competent to show the performance of those terms by part payments, making a new note or security, or by conveyance of lands.

As the judge at the trial refused to admit the release in evidence, or to allow proof of the payments as made under it for any other purpose than as a *credit* or *partial payment*, and regarded the conveyance of the lands as admissible only for the same purpose, I think the judgment of the supreme court sustaining his opinion should be reversed, and a new trial granted.

After reading the above opinion, *Senator* Verplanck added, in substance as follows :

The opinion just read by me was prepared without anticipating a difficulty as to the effect and validity of the compromise, which has just been stated by the chancellor : it is, that the conveyance of the lands in trust by Hill is a nullity, being to convey to certain creditors in satisfaction of debts ; and in case of their refusal to accept, then to sell or mortgage for their general benefit—which is not among the trusts enumerated in the revised statutes, as valid. This objection was not taken in argument before us, nor is it noticed in the opinion of the supreme court. I have therefore great reluctance to enter into the discussion of the point, even had I given it greater attention than I have done, as it

Evans v. Wells.

would, in this indirect way and without argument, perhaps, affect other and greater questions of our yet unsettled law of trusts under the revised statutes.

I can therefore only express my opinion, as at present advised, that the conveyance in trust to sell or mortgage in certain alternatives, does pass a legal estate to the grantee; that, independently of that estate, the trust to convey in satisfaction of prior debts, though in itself probably void as a *trust*, is yet good as a special *power in trust.* It falls within the definition of the statute. "It is an authority to do some act in relation to lands in the creation of estates, which the owner granting such power might himself lawfully perform." 1 *R. S.* 732, § 74. It is *special,* because "the persons to whom the disposition of the lands under the power is to be made are designated; and according to the 95th §, it is also a special power *in trust.* If so, the instrument is valid and effectual for all the purposes of the compromise, especially when the grantee of the power tendered its full and legal execution.

As, however, the consideration of the legal effect and character of the instrument, as well as of the conditions of the compromise and of their actual or tendered performance were excluded by the judge, I think, that independently of the correctness of my view of the legal character of the instrument, a new trial should be granted.

On the question being put, *Shall this judgment be reversed?* the members of the court divided as follows:

*In the affirmative:* Senators FURMAN, HAWKINS, HULL, HUNT, HUNTINGTON, MAYNARD, NICHOLAS, PECK, POWERS, SKINNER, STERLING, VERPLANCK, WORKS—13.

*In the negative:* The PRESIDENT of the Senate. The CHANCELLOR, and *Senators* EDWARDS, H. A. LIVINGSTON, PAIGE, WAGER—6.

Whereupon the judgment of the supreme court was REVERSED, and a *venire de novo* awarded.