## Jenette Widner v. Israel Olmstead and others; AND Jenette Widner v. David Lane and others.

*Bill to enforce Lien. Injunction.* Complainant owned the fee of a lot upon which stood a mill. Her husband entered into a contract in his own name, with defendant Olmstead to sell and convey to him the undivided one-half of said mill with fixtures, tools, &c.; also to lease one-half of the mill yard, upon certain payments to be made. Said parties carried on the business as partners for some time, and then rented it to their sons. Afterwards, complainant and husband agreed with defendant, Lane, to convey to him the other half of the said mill, and rent the mill yard, on condition of certain payments to be made. Soon after, Lane and said Olmstead ran the mill together, placing new machinery therein, and giving a chattel mortgage to secure the purchase money. Both bills being for the en-

forcement of a lien for the purchase money, and to prevent the removal of the machinery, it was *held*, that no ground being laid for an injunction as an independent remedy, such right must depend on the right to enforce the lien.

*Assignment of interest in bill, effect of. Parties.* Defendants in each of said cases having answered, and defendant Lane, in pursuance of a settlement, having assigned his interest to complainant and permitted both bills to be taken as confessed, *Held*, that the assignment having transferred Lane's right to complainant, the effect was equivalent to a dismissal of the bill as to Lane, and as the suit was for the enforcement of a lien for the purchase money due from Lane, and all other matters being subsidiary, the second suit went down entirely.

*Contract, effect of affirmance of part. Partnership.* Where, as in this case, complainant seeks to enforce her lien upon said contract, and has undertaken for that purpose to affirm the same, but to repudiate it as to the provision for a partnership, *Held*, that the agreement being single, it must be 'affirmed or rejected as a whole. If affirmed, it must affirm the transaction witnessed by it, and the partnership being unsettled, and the husband not a party to the bill, her claim to the purchase money could not be litigated in the suit.

*Submitted January 5th.    Decided April 4th.*

Appeal in Chancery from Wayne Circuit.

The bills in these cases were filed by complainant to enforce certain liens for purchase money under defendants' contracts, and which were treated in the nature of equitable mortgages.

The cases being closely connected in their facts, were considered together.

The facts are fully stated in the opinion.

*Levi Bishop*, for complainant.

The bill is taken as confessed by the defendant Lane, and the case is heard on pleadings and proofs as to the other defendants. The object of the bill is to foreclose an *equitable mortgage* on the mill property in question, as against the defendant Olmstead.

1. It is established that the mill property in question was the private property of the complainant.

2. The contract of sale of one-half to Olmstead on February 22d, 1854, is not denied.

3. The proper construction of the contract is, that no *lease* was to be given, till all the purchase money should be paid.

The said Widner *agrees to lease*, are the words of the contract. The agreement is made upon the express *condition* that Olmstead should pay the $950.

4. The contract being on condition to pay the purchase money, embodies within itself a mortgage for the unpaid part of the purchase money.—4 *Kent,* 10 *ed.* 146.

5. The property belonged to complainant, but the contract was made by her husband, in his own name.

She wished to file the bill in her own name, and therefore took an absolute assignment of the contract indirectly to herself. This placed both the legal and equitable title to the claim in her. In such a case it is not necessary to make the assignor a party to the suit.—*Story's Eq. Pl.* § 153.

The case is one to foreclose an equitable mortgage, the real title to which was in the assignee, and the assignment had the effect, as it was desired, to put the formal or nominal title in her.

If no assignment had been made, Widner might have been joined with the complainant, so far as the unpaid purchase money was concerned, but nothing else.

*E. Hall,* for defendants Olmstead and Lane.

*G. A. Wilcox,* for defendant Vanderbilt.

The bill in this case must be treated either as a bill for the specific performance of a contract, or for the enforcement of the balance due on a contract by the sale of the property as of mortgaged premises, and no relief can be claimed, except in accordance with its terms.

The frame and purport of the bill is to that effect, and recognizes the contract.

1. It is a personal contract between Widner and Olmstead in their own respective rights and capacities, and not as agent for any other persons.

2. The object is to form a partnership between Widner and Olmstead in the lumber business, and not simply to sell or buy a piece of real estate. Widner assumes to own the entire property. If Olmstead enters as an equal partner he must either buy or rent an undivided half. Widner, therefore, sells him an undivided half of the mill. He then agrees

to lease the undivided half of the ground so long as needed for the mill.

The final clause assumes that they are partners, viz: "It is further understood by both parties that they be, on and after this date, equal partners in the said mill, &c."

Furthermore, the bill expressly admits this to be so, and states that the "parties went on for several months with their partnership affairs, as mentioned and provided for in said contract."

It is clear, therefore, that the mill was deemed, between the parties, to be partnership property. Being for the purposes of trade, even though in its nature it might be real estate, it would be deemed personal as it respects partnership rights.— *Coll. on Part.* §§ 135, 136, *and note*; 1 *Walker*, (*Mich.*) 203. This being the true construction of the contract the bill must fail for want of parties.

3. The mill, by the contract, was partnership property.

An account must be taken, and the partnership settled. But this cannot be done without making Moses B. Widner a party.

The fact that Widner has assigned this contract to his wife in no way affects Olmstead's right to have all matters growing out of the contract settled in the same suit.

The averment in the bill, that the assignment of the contract "was not intended to cover any rights pertaining to the partnership affairs," may operate as an estoppel to bar the complainant from claiming a dividend of the assets of the partnership, but it can afford no guide to this Court in determining the meaning of the contract, or of the assignment indorsed upon it.

4. The bill must fail for want of equity.

*a.* The fee is shown never to have passed from complainant, and that no lease was ever given. The relief sought is substantially for a specific performance of the contract. But the contract, as it stands, will not justify the intervention of a court of equity in this manner

Complainant is not a party to the contract. Her name is not signed 'to it. And since she is not bound, she cannot compel Olmstead to fulfill.—1 *Sug. on Vend. pp.* 53 *and* 54, *and note*; and see *Statute of Frauds*.

*b.* The contract is personal with Widner in terms, and not with complainant; and it is incompetent to prove by parol that it was intended to be with complainant.—*Story Eq. Jur.* § 1531; 1 *Sug. on Vend.* 172; 1 *Cox,* 15.

*c.* The assignment of the contract to complainant does not help the case, because Widner neither owns the fee nor attempts to convey it to his wife.

*d.* The contract sought to be enforced was made with a stranger to the title. This cannot be enforced, even though it afterwards be assigned to the true owner. — *Sug. on Vend.* 241.

The settlement of complainant with Lane is virtually a dismissal of the bill as to him, and any assignment of his rights to complainant being subsequent to the commencement of this suit, cannot be brought into this case. — 1 *Greenl. Ev.* § 178; 3 *Id.* § 283, *and note*; 2 *Dan. Ch. Pr.* 982, *and note*; 2 *J. J. Marshall,* 138.

CHRISTIANCY J.

These two cases being closely connected in their facts, will be considered together.

The complainant, who is the wife of Moses B. Widner, was, on the 22d day of February, 1854, the owner in fee of an eighty acre lot, in the township of Huron, in the county of Wayne, upon which there was a steam saw mill, erected mainly with her money, but the engine and boiler in which seem to have been obtained on the credit of the husband, with certain chattel mortgages thereon, as collateral security. On that day the husband in his own name entered into a certain contract by deed with defendant Olmstead, by which he, "for himself, his heirs, administrators and assigns," purports to sell and convey to Olmstead, "his heirs, assigns and admini-

strators, the equal undivided half of his steam saw mill, together with all its fixtures, tools, implements and appurtenances thereto belonging," describing its location, and " further agrees to lease and let the equal one undivided half of the mill-yard, consisting of three acres of ground, to be used by said Olmstead as long as the premises shall be used for a mill, which premises shall always be free to be used in common by either or both parties, so long as either or both parties shall want to occupy the ground with a mill; upon the following conditions, viz: " the said Olmstead agrees for himself, his heirs, assigns and administrators, to pay to said Widner, his heirs and assigns, the sum of nine hundred and fifty dollars ($950) as follows; one hundred and fifty dollars at this date; secondly, he is to pay J. & J. Brainard the amount due for the boiler now in said mill, supposed to amount to about four hundred and fifty dollars ($450); thirdly, two hundred dollars ($200) to be paid by the first day of June next, and the residue to be paid on, or before the first day of October next. It is further understood by both parties that they be, on and after this date, equal partners in the said mill, without hindrance or opposition, one from the other; they are to share equal and alike, both as to gain and loss, and to be at equal expense in running said mill."

Olmstead and complainant's husband went into business and carried on said mill as partners, under said agreement, for some time, and then rented it to their sons.

On the 10th day of September, 1859, complainant and her husband entered into a contract with the defendant, David Lane, by which upon certain terms and conditions they purport to convey to Lane the other undivided half of said saw mill, machinery, &c.; and agreed to rent him the undivided half of two acres of the ground on which the mill stands, for which Lane agrees to put the mill in order, and to pay one thousand dollars in sawing, as therein specially provided. This agreement, however, though awkwardly worded, when

fairly construed, may perhaps amount merely to a conditional sale, to become absolute only on payment by Lane.

After this conveyance to Lane, he and Olmstead ran the mill together, and finding the old engine (originally in the mill at and before the sale to Olmstead) worthless or unfit for use, sold the same or some parts of it as old iron, for which they realized $42, and purchased a new engine from defendant, Vanderbilt, January 16, 1861, for which they agreed to pay $550 in instalments, (none of which had become due when Vanderbilt's answers in these cases were filed,) and for which they executed a chattel mortgage in the usual form upon the engine so purchased, and also upon the steam boiler in said mill with all the tools, fixtures and appurtenances therein. It may be loosely inferred from the mortgage and the evidence, though nothing is said upon the point in the pleadings, that the boiler was the same originally in the mill before the sale to Olmstead; but the bill does not place complainant's lien for purchase money upon any such ground, nor upon any ground different from that upon the engine and tools; nor is there any allegation that it was attached to the freehold, in any other manner than the engine.

The bill in the first entitled case is for the enforcement of complainant's lien for the purchase money claimed to be due from Olmstead under his contract above set forth; and the object of the bill in the second case is for the enforcement of a similar lien for the purchase price due from Lane under the contract with him; treating the lien in each case as an equitable mortgage. Lane is only made a party to the first bill under an allegation that he claims some interest under Olmstead, and is charged in common with Olmstead with having sold the old engine and iron, and replaced them with others, and with the intention of removing the engine, machinery and boiler, and even the mill, from the premises to avoid complainant's lien, and to the prejudice of her security. Olmstead is made a party in the second bill only as claiming some interest under Lane, and charged in common with Lane with

the design of removing the engine, &c. Vanderbilt in both cases is made a party only in respect to his chattel mortgage, and the bills claim that the engine and other mortgaged property had become and were a part of the real estate, and subject to complainant's prior lien for the purchase money; but no distinction is made between the engine and the other mortgaged property. Both bills pray for the enforcement of her lien for purchase money, as prior to any lien of Vanderbilt, and for a decree of foreclosure and sale as in case of the foreclosure of mortgages; and each prays for an injunction to restrain said Lane and Olmstead, and all acting under them, from removing said mill and machinery or selling the same. They also pray for an injunction against Vanderbilt to restrain him from removing or detaching from the lot "the property, tools and fixtures" mortgaged to him. The remedy by injunction, here sought, is merely subsidiary to the main object of the bill—the enforcement of her lien as a security for the purchase money; and no proper ground is laid for an injunction as an independent remedy. Her right to the injunction will therefore depend upon her right to enforce in these suits her lien for the purchase money, and must stand or fall with it.

Olmstead answers both bills, relying upon the conveyance by complainant's husband and his agreement therein as above set forth, claiming the validity of all its provisions, and insisting that complainant cannot affirm a part of it without affirming the whole; alleges full payment of the purchase money; that nothing is due thereon; specifies the various payments and sums claimed to apply in the nature of offsets,—all of which would properly apply on the purchase money, either as payment or offsets, if the provision for a partnership between him and complainant's husband be held valid as to her; admits that he went into partnership with the husband under the agreement; denies that he has threatened, or intends to remove the mill or machinery; avers that the matters growing out of said contract, between him and the husband, have not been settled, that upon a just settlement of the same a large

sum would be due to him, Olmstead; insists that it appears from the bill that Moses B. Widner, the husband of complainant, is a necessary party, and prays the benefit of a demurrer.

Lane answers both bills, setting up the instrument executed by complainant and husband to him; averring that he has fully performed its conditions, so far as depended upon him, and his readiness at all times to pay in sawing, but that the logs were not furnished; denying that the engine and machinery were a part of the real estate, or that he threatened or intended to remove the same. His answer need not be further stated, for reasons which will presently appear.

Vanderbilt answers both bills, setting up his mortgage and insisting upon its validity as against any lien in favor of complainant.

In this stage of these cases, a settlement seems to have been made between complainant and defendant, Lane; and the latter assigns his interest in the property in question to the complainant; and thereupon the complainant's solicitor, upon an affidavit of these facts, and that Lane consents thereto, enters an order taking the bill in each case as confessed as against Lane, but without costs.

By this assignment, we apprehend, Lane ceased to be a party, his whole interest having been transferred to the complainant. She could not be both complainant and defendant, as to that interest, and the effect was equivalent to a dismissal of the bills as to him, and no decree could thereafter be taken against him under either bill; and the whole suit in the case brought for the enforcement of complainant's claim for the purchase money due from *him*, [the second bill] was terminated as to all the parties. There was no longer any purchase money due from him, and therefore no lien for it to be enforced as against any of the parties. This therefore disposes of that case, and leaves for our consideration only the questions arising between complainant, and Olmstead and Vanderbilt under the bill founded upon the claim for purchase money under the contract with Olmstead.

These questions will be found to depend mainly upon the pleadings. The bill sets out the agreement between complainant's husband and Olmstead; avers that, though made by and in the name of the husband only, it was in fact made by him for and on behalf of the complainant, *except the stipulation therein for a partnership;* that wishing to have said contract in her own name, she, on the sixteenth day of March, 1861, obtained from her husband a full assignment thereof, and of all rights under the same, to one G. M. Mills, who on the same day assigned the same and all rights under it to the complainant, " whereby she became the owner of said contract, and all rights under the same, *except as to the partnership.*" The assignments make no such exception, but she avers they were not intended to cover and did not cover any rights pertaining to the partnership, in which she avers she had no interest. She avers there is due to her " by virtue of the lien created by said contract, and also for the said purchase money independent of the contract," [the latter phrase is not easily comprehended in this connection] " a balance of two hundred and forty dollars, with interest thereon, besides the item of four hundred and fifty dollars, mentioned in said contract, for the payment of which she files this bill;" claims she has an equitable lien and mortgage for this purchase money, not only in and by the contract, but also by the rules established in courts of equity. She distinctly admits and avers that her husband, and defendant Olmstead, " went on for several months with their partnership affairs, as mentioned and provided for in said contract," and this also appears from the evidence. There is no allegation that the partnership had ever been settled, or a balance ascertained. Olmstead, in his answer, insists they had not, and there is no evidence of such settlement, but the contrary is to be clearly inferred. Olmstead sets up various payments made by him, which would apply on partnership account or as an offset, (if the complainant is not allowed to repudiate that portion of the agreement,) which he insists more than pay the amount of the

purchase money, and without passing upon the evidence it is sufficient to say here, that it tends to establish these averments of Olmstead.

It is clear from this statement, that complainant, in attempting to establish her lien for the purchase money claimed to be due from Olmstead, rests that claim upon the written agreement made by her husband with Olmstead, and that it can have no other foundation upon the facts stated; that she claims, and can only claim, through and under that agreement, and has undertaken for that purpose to affirm that agreement as to the sale, the use of the property, and the amounts and terms of payment of the purchase money, but to repudiate it as to the provision for a partnership between her husband and Olmstead in the mill, and in the stocking and running of it. This she cannot be allowed to do. She cannot select out and affirm the provisions which operate in her favor, and reject those which may operate to her prejudice. She must affirm the whole or reject the whole. The agreement is one entire thing, and all its provisions are to be taken together. No court can be authorized to say that Olmstead would have consented to the purchase, or the amount or terms of payment, or any other of its provisions, if that in reference to the partnership had been left out. This may have been his chief inducement.

This is not the ordinary case of a person without previous authority assuming to act as the agent of another, and in his name in the making of a contract, where the person in whose name the contract is made may by subsequent ratification render it to all intents and purposes a contract between himself and the other party, and hold the latter directly liable upon it. The contract in this instance is by deed. The complainant is not named in it. The husband does not assume or purport to act in her behalf, or that of any other person. He purports to deal with the property as his own, describes the mill as his, executes the instrument and makes all the stipulations in his

own name. If she affirms this instrument she affirms the transaction witnessed by it; and it would seem, upon principle, that she must, so far as any equity of Olmstead may have accrued under it, or any act done by him on the faith of it, affirm it *as it was,*—*as the contract of the husband.* (*Saunderson v. Griffiths,* 5 *B. & C.* 909, 915; *S. C.* 8 *D. & R.* 643; *Evans v. Wells,* 22 *Wend.* 324; *Pinckney v. Hagadorn,* 1 *Duer,* 89; *Andrews v. Estes,* 2 *Fairf.* 267; *Lucas v. De La Cour,* 1 *M. & Sel.* 249; *Hamble v. Hunter,* 12 *Q. B.* 310; *New Eng. Ins. Co. v. De Wolf,* 8 *Pick.* 56.) Such affirmance must, we think, to the extent above stated at least, be treated as a previous assent on her part that her husband should thus deal with Olmstead, and that the latter might deal with the husband as the owner, and that she would be bound by the husband's acts.

But the broad question is not presented in this case, whether by an affirmance of this instrument, she could make it a contract in any sense between herself and Olmstead, or claim any rights under it as against him, without an assignment. (As assignee she could stand in the rights of her husband only.) It is sufficient for the present case, that her affirmance of the instrument would, in our opinion, operate as an affirmance of the partnership, and of the rights of Olmstead as a partner under the agreement, and her rights would depend upon the prior settlement of the partnership accounts; and for this purpose her husband is a necessary party.

It might possibly admit of a question whether complainant's bill in the present case, expressly affirming the contract in other respects, but repudiating it as to the partnership, could for all purposes be treated as an affirmance; though, as she claims a benefit under it, I am inclined to the opinion that it might; and her bill in the other case, where Lane is the principal defendant, contains a reference to the rights of Olmstead in the property, which looks much like an unqualified affirmance. And her own testimony as well as that of her husband and her daughter,—all of whom testify that she

declared she would carry out the agreements of her husband,—have some bearing in the same direction. But the point is wholly immaterial here, and we give no definite opinion upon it; since she must be considered as having *affirmed* the *whole*, or *repudiated* the *whole*. If she repudiates the whole, then there has been no sale to Olmstead; he owes nothing for purchase money; her remedy at law is complete, and her bill must be dismissed. If she affirms the whole, she affirms the partnership; and this being unsettled, and her husband not a party to the bill, her claim to the purchase money from Olmstead cannot be litigated in this suit, and the bill must be dismissed as to all the parties.

The decree of the Court below dismissing the respective bills as to all the parties must therefore be affirmed, with costs, but without prejudice.

COOLEY and CAMPBELL JJ. concurred.

MARTIN CH. J. did not sit in this case.