## STOWELL and others vs. ELDRED.

CONTRACTS: EVIDENCE: PRINCIPAL AND AGENT: FORFEITURE: SPECIFIC PERFORMANCE: PLEADING: VARIANCE. *(1, 2) Contract under seal by agent in his own name: General rule and exceptions. (3) Parol evidence that contract was made for benefit of third person. (4) Contract by A. for assignment to him of judgment against B: Default before assignment, after payments with B's property: Rights of A.: Rights of B. in action against him on the judgment.*

PLEADING: VARIANCE: EQUITABLE COUNTERCLAIM. *(5) When averments in answer will be treated as counterclaim. (6) Allegation of legal defense, with evidence of equitable counterclaim. (7, 8) Action on judgment: equitable counterclaim on the ground that judgment plaintiff, called as a witness for defendant, testified falsely as to facts within his knowledge.*

PRACTICE: AMENDMENT. *(9) Amendment of complaint after reversal of judgment.*

1. The rule, that a contract under seal, executed by an agent in his own name, does not bind, nor confer any rights upon, the principal in whose behalf it was really made, when he is not named therein, is subject to many exceptions.

2. Thus, where the instrument *would be valid without a seal*, it is to be treated, though in fact under seal, as mere evidence of a simple contract.

3. The rule which forbids the terms of a written contract to be changed by

parol evidence, will not prevent one not a party to the contract from showing that he has rights under it because it was entered into for his benefit; though neither party to the contract can show, for the purpose of relieving himself from liability thereon, that one of them was a mere agent for a third person.

4. One F., in his own name, entered into a contract under seal with plaintiffs for the purchase of a judgment recovered by the latter against defendant, in Illinois. By the terms of the contract, the judgment was to be paid for in certain property and certain sums of money for which F. then gave his notes; it was to be assigned to F. when all the payments should be fully made; and, in case of his default, plaintiffs might declare the agreement void, and all previous payments forfeited. After payments on the contract amounting to $4,100, F. made default, and plaintiffs notified him of their election to consider the agreement void and the payments forfeited, but did not offer to return his notes for the amount unpaid. In this action on the Illinois judgment, defendant set up as a defense in part, that F. made the above described agreement with plaintiffs as defendant's agent, and for his benefit; and that the money and property paid by F. upon such agreement belonged to defendant, who had thus, through F. as his agent, *paid plaintiffs on their judgment* said sum of $4,100. *Held*,

(1) That plaintiffs, not having offered to return F.'s notes before the trial, never exercised in a valid manner their option to consider the contract with him void and payments thereon forfeited.

(2) That until defendant asserted his rights under said contract as principal, F., in a suit by him for specific performance, upon tendering payment of the balance due thereon, might have compelled an assignment to him by plaintiffs of the Illinois judgment.

[(3) Whether equity would have relieved against the forfeiture, if plaintiffs, upon giving notice of their election as above stated, had offered to surrender to F. his notes, is not here determined.]

(4) That defendant's rights are coextensive with those which F. would have in such a suit by him to compel a specific performance by plaintiffs of their contract; and, as equivalent to a decree that plaintiffs assign the judgment to F. for his benefit, defendant would be entitled in this action, *upon a proper counterclaim in equity*, after tendering, or paying into court, the amount equitably due, to a decree declaring the judgment satisfied, and restraining its further collection.

(5) That as the answer alleges *payments on the judgment as a legal defense*, instead of setting up the facts by way of equitable counterclaim, evidence of such facts should have been rejected, as not tending to establish such legal defense.

5. Hereafter no averment in an answer will be held by this court to consti-

tute a *counterclaim*, unless it be so denominated, and the proper relief prayed.

6. The variance between a mere legal defense of payment and an equitable counterclaim for specific performance, is material and vital, and cannot be disregarded, or cured by summary amendment on the trial.

7. The judgment in suit was for rent alleged to have accrued under a written lease between July 1, 1861, and April 1, 1863. The lease had in fact been surrendered to plaintiffs, and accepted by them, through their duly authorized agent, in January, 1862, and the premises relet by them to other tenants. Defendant set up these facts in plaintiffs' former action, as a partial defense thereto; and, having failed, after due diligence, to obtain the testimony of said agent, called as a witness one of the plaintiffs, who was the only one of them residing in Illinois, and personally knew said facts (as did all the plaintiffs); but the witness denied the facts, and in consequence of such denial, the judgment in plaintiffs' favor was for $6,500 more than it would have been if said plaintiff had testified to the truth. *Held*, that in this action upon such judgment, defendant may maintain an *equitable counterclaim* for said sum of $6,500. 26 Wis., 604.

8. Although in a prosecution against said witness for perjury, he might allege forgetfulness of the facts at the time, to disprove a criminal intent, yet plaintiffs cannot be heard in this action to allege such forgetfulness by one of their number to enable them to recover from defendant a large sum of money which in justice and equity they ought not to recover.

9. In reversing so much of the judgment herein as declares the judgment sued upon to be satisfied to the extent of the $4,100 paid by F. on his said contract, and enjoins plaintiffs from seeking to collect that amount, this court directs the trial court to permit an amendment of the answer by inserting therein an equitable counterclaim founded on the contract between F. and plaintiffs, and the subsequent payments thereon, and upon such amendment, made within a reasonable time, to award a new trial; otherwise, to render judgment for plaintiffs for the amount of the judgment in suit, less $6,500.

APPEAL from the Circuit Court for *Milwaukee* County. The plaintiffs and certain infant wards of the plaintiff *Mary A. Stowell* being the owners of certain real estate in the city of Chicago, the plaintiffs, in the year 1856, leased the same to one Grey for a term to commence April 1st in that year, and to terminate April 1, 1863. The rent reserved in such lease was $9,000 for the first year, with an increase of $1,000 each

year, so that for the last year of the term the stipulated rent was $14,000. In December, 1856, Grey assigned this lease to the firm of Eldreds & Balcom, which firm was composed of the defendants in this action, *Anson Eldred* and Elisha Eldred, with one Uri Balcom. In March, 1860, the plaintiffs and Eldreds & Balcom entered into a written agreement reducing the rent reserved in the Grey lease, on certain conditions, to $5,000 per year, from and after October 1st in that year, and providing that the rent should be paid quarterly, and that the lessees should pay all taxes and assessments on the leased premises. The rent reserved in the lease as thus modified, which accrued before and to July 1, 1861, was fully paid; but the rent accruing from and after that date remained unpaid.

In 1864, the plaintiffs brought an action in the circuit court for Cook county, in the state of Illinois, against Eldreds & Balcom, to recover the rent to April 1, 1863, reserved in the original lease to Grey, claiming that the firm had rendered itself liable to pay the larger rent by failure to comply with the conditions of the agreement of March, 1860, reducing the rent. Balcom was not served with process in that action, and Elisha Eldred made default therein. The defendant *Anson Eldred* appeared to the action, and interposed three pleas to the declaration, one of which was *actio non* as to the rent and taxes accruing after March 31, 1862, for that on the 20th day of January, 1862, " the defendants did vacate, abandon and to the plaintiffs surrender the premises in said first count of said declaration mentioned, and every part thereof; and that afterwards, to wit, on the 1st of April, 1862, the plaintiffs accepted said surrender of said premises, entered into and resumed possession thereof, and from the time of such entry thence forward to the first day of April, 1863, had and continued to hold such possession, whereby the defendants became and were discharged and released from all liability and obligation to pay any rent, taxes or assessments for, upon or on account

of said premises, not due and payable at the time of such entry by the plaintiffs as aforesaid."

That action was tried in March, 1866, and resulted in a judgment against the defendants, on the basis of the Grey lease as modified, for $11,666. Of this sum a little more than $6,500 was for the rent (including taxes and assessments) and the interest thereon, accruing from April 1, 1862, to April 1, 1863.

The present action was brought upon such judgment, and it is alleged in the complaint (which is in the usual form of complaints on foreign judgments), that no part thereof has been paid.

The answer of the defendant *Anson Eldred* (upon whom alone the summons in the action was served) contains a defense at law, and an equitable counterclaim. The legal defense is, that said defendant, through his agent, one James Farr, Jr., paid the plaintiff upon such judgment the sum of $4,100, as follows: $2,000 on the 12th of July, 1867; $600 on the 7th of October, and $1,500 on the 2d of November, in the same year; such payment of $2,000 having been made in a corporate bond of Kansas City for $1,000, and a like amount of the stock of the Young Men's Christian Association of Chicago; that all these payments were made by Farr under a written agreement between him and the plaintiffs for the purchase by and assignment to him of such judgment; that Farr made such agreement as the agent and for the benefit of the defendant; and the money and property with which Farr made such payments belonged to, and the payments were in fact made by, the defendant.

The equitable counterclaim in the answer goes to the validity of that portion of the judgment which is for the rents, taxes, etc., for the year ending April 1, 1863. The case was before this court on a former occasion on a demurrer to such counterclaim, and is reported in 26 Wis., 504. A sufficient statement of such counterclaim will be there found in

the opinion by Mr. Justice COLE, which should be read herewith.

The written agreement between the plaintiffs of the first part and Farr of the second part, above mentioned, after describing the judgment and reciting that there is due upon it about $12,600, and that Farr desires to purchase it, proceeds as follows:

" Now, therefore, this agreement witnesseth, that the said parties of the first part, in consideration of the money to be be paid and covenants to be performed by said second party as hereinafter stated, do hereby agree that upon the full payment of the several sums of money hereinafter mentioned, and full performance of the covenants hereinafter mentioned to be performed by the said party of the second part, they, the said parties of the first part, will assign, transfer and set over unto the said party of the second part, all their right, title and interest in and to said judgment and the money due thereon. In consideration of which, the said party of the second part agrees to pay to the said first parties the sum of twelve thousand six hundred dollars, in the manner following, that is to say: one thousand dollars in Kansas City bonds, and one thousand dollars of the stock of the Young Men's Christian Association Building, the receipt whereof by said first parties is hereby acknowledged and the said second party forever released and discharged therefrom; thirty-six hundred dollars worth of lumber, to be delivered at Chicago, in the month of September, 1867, said lumber to be mill run, from the mill of said second party at Stiles or Muskegon, at the option of said second party, and is to be delivered and turned over to said first parties at the market price of the same kind and quality of lumber in Chicago at the time of the delivery of the same; thirty-five hundred dollars on September 1, 1868; and thirty-five hundred dollars on September 1, 1869; which said two last mentioned sums of money are secured to be paid by two certain promissory notes of said second party,

of even date herewith, for the sum of thirty-five hundred dollars each, payable to the order of *Samuel R. Haven*, on the 1st day of September, 1868 and 1869, respectively, with interest at seven per cent. per annum, payable annually.

" It is mutually agreed and understood by and between the parties hereto, that as soon as the above sums of money shall have been fully paid in manner aforesaid, said judgment shall be assigned, transferred and set over to said second party; but nothing herein shall be held or construed as a present assignment of said judgments, or to have the affect to assign, transfer or set over to said second party said judgment or any right, title or interest in and to the same, until said several sums of money above mentioned shall have been fully paid by said second party in manner aforesaid.

" It is further mutually understood and agreed, that in case the said second party shall fail to pay the money, and keep his covenants herein contained, according to the terms of this agreement, that then and in that event the said parties of the first part may, at their option, declare this agreement null and void, and thereupon all money paid under this agreement shall be forfeited by said second party."

This agreement bears date July 12, 1867, and is executed under seal by each party thereto. It was subsequently modified so that, instead of delivering the lumber therein mentioned, Farr paid $600 in cash, and gave his two promissory notes on short time for $1,500 each, one of which he paid in November, 1867, and the other remains unpaid. The two notes for $3,500 mentioned in the agreement were given by Farr to the plaintiffs, and no part of them has been paid. These unpaid notes were not surrendered to Farr, and it does not appear that any offer to surrender them was made until the trial of this action.

Under date of January 14, 1868, Messrs. Walker & Dexter, attorneys residing in Chicago, addressed a communication to Farr on behalf of the plaintiffs, declaring the above agree-

ment and all payments made thereon forfeited, because of his failure to make the payments provided for therein. No mention of the outstanding notes of Farr is made in that communication.

. The circuit court found as facts, that in making such agreement Farr acted as the agent of the defendant *Anson Eldred*, at his request and for his use and benefit; that in making such payments thereon Farr also acted as his agent, and " that the money and property with which said payments were made, belonged to the said *Anson Eldred* at the time they were so used, and that said payments so made by the said James Farr, Jr., to said plaintiffs were in fact made by said *Anson Eldred* to said plaintiffs upon said judgment."

A statement of the testimony in support of the equitable counterclaim in the answer will be found in the opinion. The court found that such counterclaim was proved, and held that it was available to reduce the judgment in suit $6,503.84, leaving that judgment valid for the sum of $5,176.96 only. The court also held that the payments made by Farr on his agreement with the plaintiffs should be allowed to the defendant as payments on the judgment. Upon the foregoing basis the court stated an account, and found that there was equitably due the plaintiffs on the Illinois judgment, at the date of the finding (May 6, 1875), the sum of $2,245.82, and no more. If the correct basis was adopted by the court, the accuracy of the computation is not questioned.

The circuit court also held that upon payment by him of the sum last above mentioned into court, together with interest thereon from that date to the date of payment, for the use of the plaintiffs, the judgment in suit "should be declared fully paid, satisfied and discharged as to the defendant *Anson Eldred*, and said plaintiffs should be perpetually restrained and enjoined from collecting, or in any manner enforcing, said judgment against the said defendant *Anson Eldred*, for any sum whatsoever."

*Anson Eldred* thereupon paid into court the required sum, and. judgment was rendered in his favor in accordance with the above conclusion of law, and against him for the costs of the action.

The plaintiffs appealed from the whole of such judgment, except that portion which awards costs against the defendant.

*L. S. Dixon,* for appellants:

1. The court erred in admitting the contract between plaintiffs and Farr, and parol evidence that *Eldred,* instead of Farr, was the real party to it.   Such evidence contradicted the writing.   *Lincoln v. Crandell,* 21 Wend., 101; *Becker v. Lamont,* 13 How. Pr., 24; *Chappell v. Dann,* 21 Barb., 17; *Auburn City Bank v. Leonard,* 40 id., 119; *Galusha v. Hitchcock,* 29 id., 193; *Evans v. Wells,* 22 Wend., 324; *Newcomb v. Clark,* 1 Denio, 229; *Fenly v. Steward,* 5 Sandf., 101; *Arfridson v. Ladd,* 12 Mass., 173; *Stackpole v. Arnold,* 11 id., 27; *Williams v. Christie,* 4 Duer, 29; *Higgins v. Senior,* 8 Mees: & W., 834.   Even those cases which recognize the right to vary the terms of a written contract by parol evidence that a party to it acted as an agent merely, except the cases of *contracts under seal.   Sims v. Bond,* 5 B. & Ad., 393; *Lerned v. Johns,* 9 Allen, 421; *N. J. Steam Navigation Co. v. Merchants' Bank,* 6 How., 344; *New England Ins. Co. v. De Wolf,* 8 Pick., 61; *Rice v. Gove,* 22 id., 158.   2. The evidence does not show that, as to the plaintiffs, Farr was acting as the agent of *Eldred,* or that the payments were made with *Eldred's* property.   It is conceded that *Eldred* was largely indebted to the plaintiffs and others, and that, for the purpose of concealing his property from those creditors who might be disposed to seize it for the collection of their debts, he had transferred it all to Farr, and was doing all his business in Farr's name.   As to all the world except creditors of *Eldred* who might elect to treat it as his property, and *bona fide* purchasers, the property was Farr's.   *Fargo v. Ladd,* 6 Wis., 106–117; *Clapp v. Tirrell,* 20 Pick., 247; *Hawes v. Leader,*

Cro. Jac., 270; *Osborn v. Moss*, 7 Johns., 161; *Jackson v. Garnsey*, 16 id., 189; *Drinkwater v. Drinkwater*, 4 Mass., 354; *Fairbanks v. Blockington*, 9 Pick., 93; *Clemens v. Clemens*, 28 Wis., 637. Had Farr obtained an assignment of the judgment, paying for it out of this property or its proceeds, it would have been a valid judgment in his hands or the hands of his creditors, against *Eldred*. The property becoming absolutely Farr's, it becomes at once subject to his debts. *Den v. Monjoy*, 2 Halstead, 173; *Douglas v. Dunlap*, 10 Ohio, 162. And a voluntary reconveyance of it to *Eldred* would be fraudulent as to Farr's creditors. *Chapin v. Pease*, 10 Conn., 69. After the contract was entered into, the plaintiffs occupied the double position of creditor of Farr and purchaser from him. Any one liable upon a contract, express or implied, is a debtor. 1 Am. L. C., 75; *Sargent v. Salmond*, 27 Me., 539, 543; *Carlisle v. Rich*, 8 N. H., 44; *Seward v. Jackson*, 8 Cow., 407. 3. In any event, *Eldred* can only assume the contract subject to all the rights that the plaintiffs could have exercised against Farr, had he been the real principal. 2 Smith's L. C., 227; *Sims v. Bond*, 5 B. & Ad., 393; 8 M. & W., 834; *N. J. Steam Nav. Co. v. Merchants' Bank*, 6 How. (U. S.), 344. But, under the contract, the party failing to perform could have no rights *at law*. He could not recover the money actually paid, even though this forfeiture clause had not been inserted. *Edgerton v. Peckham*, 11 Paige, 364; *Haynes v. Hart*, 42 Barb., 58; *Green v. Green*, 9 Cow., 46; *Ketchum v. Evertson*, 13 Johns., 364; *Hudson v. Swift*, 20 id., 26; *Hasbrough v. Peck*, 5 Wall., 497. And if the amount could not be recovered by either Farr or *Eldred* from the plaintiffs in an action brought for that purpose, it cannot be *offset* in this action. *Kingston Bank v. Gay*, 19 Barb., 459. Neither do the facts show any ground for equitable relief from the failure to perform the conditions precedent. Courts of equity do not relieve against the nonperformance of conditions precedent. *Witts v. Smith*, 2 Edw., 78; *Rogan v. Walker*, 1 Wis., 527.

The parties having made time of the essence of the contract, they cannot be relieved in a court of equity on the ground that such was not their intention. *Benedict v. Lynch*, 1 Johns. Ch., 370. Moreover, if equity would relieve against the forfeiture here, the party in default must first tender payment of the balance *due on the contract;* and his only remedy is by *bill for specific performance.* 4. Viewing the contract as one between plaintiffs and defendant, and the money and other property paid thereon by Farr as belonging to the defendant, it may be said that we have $4,100 of defendant's property for which he has received no consideration. But (1) such a claim might be made by any party who has partly performed and then abandoned his contract. We hold the property according to the terms of the contract. (2) There was a full and ample consideration for the agreement. By means of this contract, a seizure of the property, and consequent exposure of the cover held over it, was prevented; the time of payment was materially extended, some of it for twenty-six months; a large portion of the amount due was to be paid in property instead of money; and *Anson Eldred* was enabled to keep the judgment alive against Elisha Eldred, the other judgment debtor, who is *prima facie* liable for half the amount; while the plaintiffs lost the right to enforce collection of the judgment against Elisha Eldred. 5. As to the equitable counterclaim, there is nothing in the former opinion of this court in this case (26 Wis., 507) infringing or modifying the rule that a court of equity will not relieve against a judgment at law on the ground that it is wrong, even though the new evidence may be of such a character as to put the question beyond a doubt (*Mason v. Palmer*, 2 Ind., 117; *Marriot v. Hampton*, 7 D. & E.,. 269; *Young v. Keighley*, 16 Vesey Jr., 349; *Driscoll v. Dampf*, 17 Wis., 419); not even where the witness upon whose testimony the judgment was obtained, is shown to have been mistaken, or willfully to have sworn falsely. *Smith v. Lowry*, 1 Johns. Ch., 320;

*Vaughn v. Johnson*, 1 Stockt. Ch., 178; 16 Iowa, 310; 20 id., 481. It is the duty of a party to know what his witnesses will swear to. *Williams v. Lockwood*, 1 Clarke's· Ch., 172.

6. Counsel argued that the evidence failed to show any fraudulent concealment of evidence by the plaintiffs, or that *Dr. Haven* intentionally swore falsely -in reference to· any fact within his knowledge; and that the defendant had been guilty of laches in not applying to the court in which the judgment was rendered for a new trial.. 2 Story's Eq. Jur:, § 895.

*F. C. Winkler* and *A. L. Cary*, for respondent:

1. Plaintiff's exceptions to the findings of the court were not made a part of the bill of exceptions, and cannot be considered by this court. Secs. 13, 14, ch. 264, Laws of 1860; sec. 1, ch. 36, Laws of 1872; *Merwin v. O'Day*, 9 Wis., 156; *Hunt v. Bloomer*, 13 N. Y., 341; *Dougherty v. North Wis. R'y Co.*, 36 Wis., 402; *Gilbank v. Stephenson*, 30 id., 155; *Jenkins v. Esterly*, 22 id., 128. Hence, the only question to be determined by this court is, whether the judgment is sustained by the pleadings and the findings of the court. *Wisconsin Improvement Co. v. Lyons*, 30 Wis., 61; *Blossom v. Ferguson*, 13 id., 75; *Brant v. Salisbury*, 23 id., 515. 2. The payments made by Farr were properly applied in part satisfaction of the judgment. Where an agent makes a contract in his own name, without disclosing his principal, the principal is entitled to the benefit of the contract, and may sue or be sued thereon, although the agent may also be liable. *Taintor v. Prendergast*, 3 Hill, 72; *Huntington v. Knox*, 7 Cush., 371; *Higgins v. Senior*, 8 Mees. & Wels., 840; Story on Agency, § 410. . The forfeiture clause in the contract must be regarded as a penalty and not as liquidated damages. The agreement on the part of Farr was for the payment of money merely, and the doctrine of liquidated damages is not applicable to that class of agreements. *Fitzpatrick v. Cottingham*, 14 Wis., 219. 3. A judgment of another state, if sued upon here, may be reëxamined and relieved against to the same ex-

tent as if sued upon in the courts of the state where recovered. *Brown v. Parker*, 28 Wis., 21; *Stowell v. Eldred*, 26 id., 504. 4. An actual surrender of possession of the premises by the lessee to the lessor, and a leasing of them by the latter to a third party, will have the effect of a surrender of the lease. *Witman v. Watry*, 31 Wis., 638. The ratification of Schofield's acts by the plaintiffs was equivalent to a previous express authority. *Ballston Spa Bank v. Marine Bank*, 16 Wis., 120. Counsel further argued that the allegations contained in the equitable counterclaim were proved by the evidence.

LYON, J. I. It is earnestly argued by the learned counsel for the plaintiffs, that the defendant *Anson Eldred* can derive no benefit from the payments made by Farr on his agreement with the plaintiffs for the purchase of the Illinois judgment, notwithstanding such agreement was in fact made by Farr as the agent of *Eldred*, for him and at his request, and such payments thereon were made with the money and property of *Eldred*. The argument is based upon the facts that the agreement is a sealed instrument, and that it does not appear on its face that *Eldred* had any interest in it. To sustain the position, the counsel invoke two familiar rules of law: 1. That the terms of a written contract cannot be changed by parol evidence; and 2. That a contract under seal executed by an agent in his own name, does not bind the principal not named therein, but it in whose behalf the contract was in fact made, nor does it confer any rights upon such principal. Story on Agency, § 160. So many exceptions to the last rule have been made in modern times by the courts, that the rule seems to operate at the present time within quite narrow limits. One of these exceptions, sanctioned by reason and authority, is, that if the instrument would be valid without a seal, then, although executed under seal, it is to be treated as written evidence of a simple contract, and the seal adds nothing to it. Opinion of Senator VERPLANCK in *Evans v. Wells*, 22 Wend.,

341. That the agreement between Farr and the plaintiffs would have been equally valid and binding upon the parties had it not been executed under seal, will not be denied. Hence it comes within the exception to the rule last above stated.

Neither is it a violation of the rule which prohibits the changing of the terms of written contracts by parol evidence, to permit the defendant *Anson Eldred* to avail himself of the benefits of the agreement made for him by Farr for the purchase of the Illinois judgment. It is not sought to deprive any party to that agreement of any right, or to relieve any party thereto from any liability given or imposed by that instrument, but only to show that a person not a party thereto has rights under it because it was entered into for his benefit. It is no more a violation of the rule under consideration to permit *Anson Eldred* to do this, than it would be to sustain an action on the instrument brought by a person to whom Farr had assigned his rights under it. The true significance of the rule as applied to this case is, that Farr cannot relieve himself from liability to the plaintiffs under his agreement with them, by showing that he made the agreement merely as the agent of *Eldred* and for him, nor can the plaintiffs, by like proof, relieve themselves from liability to Farr. But the rule will not prevent *Eldred* from asserting and enforcing the same rights that Farr has under the agreement, or the plaintiffs from asserting and enforcing the liability of *Eldred* thereunder, coëxtensive with that of Farr. The rule of law which is believed to be applicable to this case is thus stated by Judge STORY in his work on Agency: " If the agent possesses due authority to make a written contract, not under seal, and he makes it in his own name, whether he describes himself to be an agent or not, or whether the principal be known or unknown, he, the agent, will be liable to be sued, and be entitled to sue thereon, and his principal also will be liable to be sued, and be entitled to sue thereon in all cases, unless from the at-

tendant circumstances, it is clearly manifested that an exclusive credit is given to the agent, and it is intended by both parties that no resort shall in any event be had by or against the principal, upon it." § 160 a. There is nothing in the agreement under consideration, or in the attendant circumstances, manifesting an intention by the parties thus to exclude *Eldred* from benefit or liability under it. This doctrine is fully sustained by numerous adjudged cases, many of which are cited in the notes to the text, from which the above quotation is made. It is abundantly proved that Farr entered into the agreement with the plaintiffs for the purchase and assignment of the Illinois judgment, for and on behalf of *Anson Eldred* and for his use and benefit. In the light of the principles above stated, it must be held that the latter may avail himself of the benefits of that agreement.

It must be further held that his rights are coëxtensive with those which Farr would have, were he in court seeking to compel the plaintiffs to perform the agreement on their part. We do not mean that *Eldred* must be confined literally to the relief to which Farr would be entitled — but he must be substantially confined to it. The fact that the judgment, which is the subject matter of the agreement, is against *Eldred*, may render necessary a change in the form of the relief, if relief be granted. For example, if Farr would be entitled to an assignment of the judgment should he prevail in an action brought by him against the plaintiffs to enforce specific performance of the agreement, in a like action by *Eldred* he might be entitled to a discharge of the judgment, or to an injunction restraining the collection of it; for it is quite immaterial to the plaintiffs whether they assign or discharge, and the difference between the two modes of relief is unimportant and formal. Neither do we mean to say that *Anson Eldred* may not, in this action, enforce his equitable counterclaim; for that is a matter entirely independent of such agreement.

We are not to consider and determine what the rights of

Farr would be under the agreement, were he seeking to enforce them.

In 1868, the plaintiffs attempted to exercise the option given them in the agreement, to declare the same void and to secure the forfeiture of the payments theretofore made on it by Farr. This they could not do effectually without an offer to surrender to Farr the outstanding notes which he had given them in part execution of the agreement; and they made no such offer. Hence there has been no sufficient exercise of such option, and, consequently, no forfeiture of the payments made by Farr on the agreement. We are not called upon to determine, and do not here determine, whether or not a court of equity would relieve against such forfeiture, had the plaintiffs, with the attempted exercise of such option in 1868, surrendered or offered to surrender to Farr such outstanding notes.

As the case stands upon the proofs, until *Anson Eldred* asserted his rights under the agreement, as principal, Farr could have maintained an action against the plaintiffs to compel a specific performance of the agreement, upon tendering or offering payment of the balance due thereon. Specific performance in such case would be an assignment to Farr of the Illinois judgment. Inasmuch as Farr would take such assignment as the agent and for the use and benefit of *Anson Eldred*, who paid the consideration therefor, aside from any question of fraud, such specific performance would be equivalent to a discharge of the judgment.

When this action was commenced, *Anson Eldred* had the same right to enforce specific performance of the agreement on the same terms and conditions; and in such case the appropriate specific performance is the equivalent of assignment to Farr, to wit, the discharge of the judgment, or a decree declaring the judgment fully paid and satisfied.

But such relief, whether at the suit of Farr or of *Anson Eldred*, can only be obtained in a court of equity. Hence,

while it is competent for *Eldred* to obtain such relief in this action, he can only obtain it by pleading a counterclaim in the nature of a bill in equity for a specific performance of the agreement.

The payments made by Farr on the agreement are pleaded as payments on the Illinois judgment; but they are not payments on the judgment, and are not available as a legal defense to an action thereon.

It was argued at the bar that there is enough in such plea of payment to constitute it a counterclaim. But we think otherwise. The answer in that behalf avers payment by Farr of $4,100 on the judgment, and claims that the amount should be allowed as such. This is no counterclaim, much less is it an equitable counterclaim, but only a legal defense to a part of the plaintiffs' claim. The issue upon it would be triable by a jury. As such defense, it is not available in this action. The testimony introduced under it, and received under objection, failed entirely to show that those payments were made on the judgment; and under the pleadings as they are, the testimony should have been rejected.

On former occasions this court has had under consideration answers containing averments of fact so pleaded that it was doubtful whether counterclaims were predicated upon them, or whether they were alleged merely as defenses; and by argument and the application of various tests, the court has determined the character of these pleadings. Should it be asserted that there is an inconsistency in those decisions, we are not prepared to dispute the assertion. The rule on this subject should be certain and uniform. In order that it may be so in the future, we take this occasion to say that hereafter no averment in an answer will be held to constitute a counterclaim, unless it is so denominated and the appropriate relief prayed. Wanting these requisites, the pleading will be held to be a defense only. It is so easy to commence a counterclaim by denominating it a counterclaim, and to close it with a demand

for relief, that it is not unreasonable, and does no violence to the spirit of the code, to require the pleader to do so.

The judgment herein is substantially a judgment in equity for the specific performance, by the plaintiffs, of their agreement with Farr. The action is an action at law, and we have seen that the portion of the answer under consideration, and upon which the judgment is founded in part, is merely a legal defense. Hence there are no sufficient pleadings to support the judgment. The variance between a mere legal defense of payment, and an equitable counterclaim for specific performance, is material and vital; and it cannot be disregarded, or cured by summary amendment of the answer on the trial.

II. Although the views above expressed must necessarily result in the reversal of the judgment, yet, for the purpose of giving the proper directions to the circuit court, it is necessary to consider that portion of the judgment which relates to the equitable counterclaim in the answer.

It appears from the evidence that the plaintiffs *Samuel R. Haven* and *Jane S. Haven*, his wife, have resided for many years in the city of Chicago, and that all the other plaintiffs, during the time covered by the transactions involved in this litigation, resided, and still reside, in the state of Massachusetts; that *Samuel R. Haven* (who is referred to in the bill of exceptions as *Dr. Haven*) had the sole charge of the premises described in the Grey lease, renting the same and collecting the rents, from the time that lease was executed until the spring of 1861, when he entered the army as a surgeon and remained therein until the spring or summer of 1863; and that during that period he was almost constantly absent from Chicago. On leaving Chicago, in 1861, *Dr. Haven* appointed one Schofield his agent to transact all his business in that city during his absence, and delivered to him all his papers relating to the Stowell property leased to Grey, but which property was then occupied by Eldreds & Balcom.

In January, 1862, Eldreds & Balcom abandoned the leased

property, notified Schofield of the fact, and surrendered or offered to surrender the same to him for the plaintiffs. Thereupon, in March, 1862, the plaintiff *Mary A. Stowell*, who owned or represented an undivided seven-ninths of the property, gave Schofield a formal power of attorney duly authorizing him to relet the same; the plaintiff *George W. Johnson*, who represented one-ninth of the property, wrote to Schofield telling him to use his best discretion in leasing the property, and giving him certain directions as to terms of lease; and *Dr. Haven*, who represented the other one-ninth interest, wrote to Schofield from Virginia, telling him to do as he thought best in the matter. It is certain that all of the above named plaintiffs knew, at the time they so acted or wrote, that the property was vacant, and that Eldreds & Balcom were endeavoring to surrender their lease.

Armed with such ample authority to do so, Schofield, on the 24th of March, 1862, leased the property to the firm of Pearson & Avery for one year from May 1, 1862, at the rent of $2,500 per year, and said lessees entered into possession thereof April 1, 1862. Under date of March 30th, in the same year, and no doubt in anwer to a letter from Schofield informing him that the property had been leased to Pearson & Avery, *Johnson* wrote to Schofield that he was glad to hear that the property was rented to a responsible man, and that the rent for the first quarter had been paid.

Schofield collected the rent for two quarters of Pearson & Avery, and accounted therefor to the plaintiffs. Under date of October 23, 1862, he remitted to *Johnson* a draft for $606.25, with statement showing it to have been received for rent of the property leased to Pearson & Avery; and five days later, *Johnson* acknowledged by letter the receipt of the draft.

Schofield having ceased to act as the agent of the plaintiffs, one Ingalls collected the rent of Pearson & Avery for the third quarter, and paid over or accounted for the same to *Dr. Haven*, who, for himself and all the other plaintiffs, re-

ceipted to him therefor. This receipt is defectively dated, but was doubtless given May 1, 1863, at which time *Dr. Haven* was temporarily in Chicago. On the same day (May 1, 1863) *Dr. Haven* in person collected the rent of Pearson & Avery for the fourth quarter, ending on that day.

After the action was brought against Eldreds & Balcom, in 1864, in the Cook county circuit court, the defendant *Anson Eldred* made reasonable and diligent efforts to find Schofield (who left Chicago in 1862), for the purpose of obtaining his testimony, which, had it been obtained, would have proved or tended to prove *Eldred's* defense in that action as to the rent accruing after April 1, 1862. Those efforts were unsuccessful. *Dr. Haven* was the only plaintiff in that action who was present at the trial thereof. *Eldred* called him as a witness to prove such defense, and he was duly sworn and examined in that behalf. But, instead of testifying to the facts as he knew them to be, or, at least, as he had recently known them to be, he denied that he authorized Schofield to act for the Stowell estate in respect to the property leased to Grey and occupied by Eldreds & Balcom; he denied all knowledge of the lease to Pearson & Avery; he denied that he had ever received a dollar of rent accruing under that lease to his knowledge; he denied knowledge that any of the plaintiffs ever received any such rent, or knew of the existence of the lease; and, in brief, he denied more or less positively all knowledge of the existence of any and every fact material and essential to such defense. Having no other testimony at hand to prove the same, of course *Eldred* failed to establish his defense, and judgment went against him for $6,500 more than plaintiffs would have recovered had *Dr. Haven* testified to the facts as they were. The foregoing facts are substantially stated in the answer, and in the findings of the court.

It would seem from the above statement that the case is a proper one for equitable relief, within the rule laid down on the former appeal (26 Wis., 504). It is claimed, however,

that the case is not not within that rule, for the alleged reason that *Dr. Haven* did not commit perjury in his testimony on the trial of the Illinois suit, but that he had forgotten the facts, and testified honestly, though inaccurately. The answer to this position is, that *Dr. Haven*, knowing all the facts essential to *Eldred's* defense in that suit, ought not to have forgotten them when a little honest effort in that direction would have brought them within his recollection. He and his coplaintiffs cannot be heard in a court of equity to assert such forgetfulness, and thereby compel *Anson Eldred* to pay them many thousands of dollars more than in equity and justice he owes them.

The propriety and reasonableness of these views will be more apparent if we look for a moment at a single aspect of the case, and there are others equally significant. In 1863, *Dr. Haven*, in person, collected $625 in cash of Pearson & Avery, for rent accruing under their lease of the property theretofore held by Eldreds & Balcom under the Grey lease. At the same time he received the account of Ingalls, the agent of the plaintiffs, and receipted to him for a like amount of rent collected by Ingalls of Pearson & Avery on the same lease.

Proof of these transactions on the trial would have reduced the judgment in suit $6,500. *Dr. Haven*, on being called as a witness to make such proof, testified that he never received a dollar of rent accruing under the Pearson & Avery lease, to his knowledge. Such testimony was given within less than three years after he received in person a large sum of money, and audited the account of Ingalls for another large sum (amounting in all to $1,250), all of which accrued under that lease. Because *Dr. Haven* so testified, the judgment in suit is for $6,500 more than it would have been had he testified that he received the rent. What manner of equity would that be which would permit him and his coplaintiffs to enforce payment of that portion of the judgment?

Let us look for a moment at another aspect of the case.

The Illinois suit was commenced in 1864. At that time every one of the plaintiffs knew that Eldreds & Balcom were not legally liable for any rent accruing on the Grey lease after April 1, 1862. That action was brought too recently after the transactions above narrated to leave any room for the plea of forgetfulness. Yet the plaintiffs sought in that suit to recover, and, by means of the alleged forgetfulness of facts by one of their number, did recover, thousands of dollars of rent accruing after that date.

The plaintiffs seek to recover the full amount of the Illinois judgment, principal and interest, less $2,500 received of Pearson & Avery, which they now offer to allow thereon. To permit them, under all of the circumstances of the case, to do so, would be to permit the defendants to be grossly wronged; and to hold that a court of equity is powerless to prevent such wrong from being consummated, would be to restrict the powers of that court to relieve against fraud and injustice, within limits altogether too narrow.

Were *Dr. Haven* on trial for perjury assigned upon his testimony in the Illinois suit, he might allege forgetfulness of the fact to disprove criminal intent; but the plaintiffs ought not to be heard to allege such forgetfulness by one of their number to enable them to recover of *Anson Eldred* several thousands of dollars more than in justice and equity they ought to recover.

Our conclusions are, that to entitle the defendant *Anson Eldred* to recover on his equitable counterclaim, it is sufficient that he has proved: 1. That when the Illinois suit was brought, the plaintiffs knew they had no valid claim against Eldreds & Balcom for rent accruing after April 1, 1862; 2. That *Dr. Haven*, when examined as a witness on the trial of that suit, denied knowledge of facts which were within his knowledge, and which he ought to have recollected, and which, had they been proved, would have prevented a recovery for rent accruing after that date; and, 3. That he, the said

*Anson Eldred*, is not chargeable with laches in that action, in respect to his defense thereof.

The portion of the judgment of the circuit court appealed from must be reversed, and the cause remanded with directions to that court to permit the defendant *Anson Eldred* to amend his answer by inserting therein another equitable counterclaim founded on the contract between Farr and the plaintiffs, and the payment of money into court as stated in the judgment. The nature of such counterclaim has already been sufficiently indicated. If the amendment be made within such reasonable time as the court shall direct, a new trial is awarded. Otherwise, judgment must be entered for the plaintiffs for the Chicago judgment less $6,503.84, and interest on the balance at six per cent. from the time the judgment was rendered.

*By the Court.* — Ordered accordingly.