Saveland vs. Green.

SAVELAND VS. GREEN.

PRINCIPAL AND AGENT: TELEGRAMS: EVIDENCE. *(1-6) Ratification of agent's unauthorized act. (3-5) When telegram, in form as received, admissible in evidence. (7, 8) Admissions, and evidence thereof. (9) When award against agent binding on principal.*
REVERSAL OF JUDGMENT: *(10) For improper admission of evidence.*

1. Where a person assumes in good faith, but without authority in fact, to act as agent for another, the latter, on being fully informed of the act, must disaffirm it within a reasonable time (at least where his silence would prejudice innocent parties), or he will be held to have ratified it.
2. Thus, where the owner of a vessel, on being informed by a broker at his place of residence that he had procured such vessel to be chartered at certain rates in a distant city, did not disaffirm the contract *either to such broker or the charterer*, the jury might find a ratification.
3. The party who sends an order by telegraph makes the telegraph company his agent for its transmission and delivery, and is bound by the message *as delivered;* and where legal rights of the receiver, founded upon such order, are in question, he is entitled to put in evidence the message actually received, as the original.
4. Defendant employed C. to charter his vessel to carry wheat from Milwaukee to Buffalo, *on condition* that a cargo of coal for Milwaukee could be procured for her at Buffalo. C. engaged the services of B., a vessel-broker at Buffalo, who telegraphed to plaintiff at Milwaukee to charter the vessel at specified rates, *without condition. Held,* that B. became

defendant's lawful agent to charter the vessel, and his order to plaintiff, being within the general scope of his authority as such agent, was binding on defendant.

5. If defendant, with knowledge of B.'s telegram to plaintiff, ratified the plaintiff's act, he must also be held to have ratified B.'s act in sending such order, and he thereby became bound by the order *as delivered*.

6. Evidence for defendant, that, in a conversation with C. alone, after hearing of B.'s action, he repudiated the contract, was inadmissible.

7. The deliberate *admission* of a party against his own interest, if satisfactorily proved, is not necessarily feeble evidence, without corroboration.

8. The weight to be given to *evidence of such admissions* is for the jury; and though the court may properly instruct them that evidence of that kind is to be received with great caution, yet there would be no error in refusing to charge that in every case such evidence would "be very feeble unless fully corroborated."

9. Proceedings before the board of arbitrators of a chamber of commerce of which plaintiff was a member, and the award of damages made by such board against plaintiff for failure to furnish defendant's vessel as he had contracted (with proof that plaintiff had paid such award), were not admissible in evidence to show defendant liable to plaintiff for the amount so awarded, without proof of notice to defendant of such proceedings, or of any fact connecting him therewith. Whether such an award is *ever* admissible against a third party, is not here decided.

10. The improper admission of evidence as to the measure of damages is not material error, where, upon other and legitimate evidence received, the court might properly have directed the jury to find the verdict actually rendered.

APPEAL from the Circuit Court for *Milwaukee* County.

The complaint remains as it was left by the decision of this court, reported in 36 Wis., 612, where a statement of its averments will be found. It also states a cause of action for commissions as a vessel-broker. The answer is a general denial of all the material allegations of the complaint, except that defendant is the owner of the "J. D. Sawyer," the vessel therein mentioned.

On the trial, it was proved that on the 30th of August, 1873, in the city of Buffalo, defendant authorized one Citterly, who was a shipper of coal and sometimes a vessel-broker, to charter the "J. D. Sawyer," then on her way from Chicago to Buf-

falo, for a cargo of wheat from Milwaukee to Buffalo, at ten cents per bushel, but upon condition that he should obtain for the vessel a cargo of coal at Buffalo for Milwaukee. Citterly thereupon conversed on the subject with one Bohne, a vessel-broker at Buffalo, and informed the defendant that he had done so. Bohne at once telegraphed an order to the plaintiff, who is a vessel-broker at Milwaukee, as follows: "Charter J. D. Sawyer ten cents." The plaintiff thereupon entered into the contract with George I. Jones & Co., which is set out in the complaint, by which, in his own name, he chartered the vessel to that firm for a cargo of wheat to Buffalo on her first arrival from that port, at ten cents per bushel. The capacity of the vessel was 40,000 bushels of wheat. The plaintiff then telegraphed to Bohne as follows: "J. D. Sawyer is chartered at ten cents." Another vessel is named in the telegrams, and two others in the charter-party; but these facts are of no significance in the case.

When Bohne received such telegram from the plaintiff, he showed it to Citterly and the defendant, both of whom happened to be in his office when he received it. The defendant then remarked: "You do business in a hurry here in this office."

All the foregoing transactions occurred August 30, 1873, and there is no conflict of testimony concerning them.

The testimony, although conflicting, tends to prove that Citterly authorized Bohne to negotiate a charter of the vessel, unconditionally, for a cargo of wheat at ten cents per bushel from Milwaukee to Buffalo; and that when the defendant saw the telegram from the plaintiff, he did not repudiate or disaffirm to Bohne or to the plaintiff the contract made by the latter with Jones & Co.

It further appears that on the 15th of September, 1873, Jones & Co. demanded of the plaintiff a performance of such contract on his part, but he failed to furnish the vessel as the contract required, and Jones & Co. were compelled to charter

other vessels on which to ship their wheat; and that they paid therefor an increased rate of transportation, to wit, 13¼ cents per bushel to Buffalo. It is not denied that a reasonable time had then elapsed for the "J. D. Sawyer" to reach Milwaukee.

The plaintiff was allowed to read in evidence, against defendant's objection, certain proceedings before the board of arbitrators of the Milwaukee Chamber of Commerce, instituted by Jones & Co. against the plaintiff, for the determination of the claim of that firm for damages for the failure of the plaintiff to comply with the terms of such charter-party; together with the award of such board in the premises, to the effect that the contract was broken September 17, 1873, on which day the market rate of wheat freights from Milwaukee to Buffalo was 13½ cents per bushel; and that the damage sustained by Jones & Co., was $1,400, by reason of such breach. The plaintiff paid the award November 8, 1873.

The undisputed evidence shows that if the plaintiff is entitled to recover in the action at all, he should recover $40 for commissions.

The instructions to the jury, and some of the testimony in the case, together with certain rulings by the court on the trial, are sufficiently stated in the following opinion. A motion by the defendant that the plaintiff be nonsuited, was denied; and the jury returned a verdict for the plaintiff for $1,668.83. They were instructed to allow interest on the damages for the breach of the charter-party, from the time they were paid by the plaintiff to Jones & Co., if they found the defendant liable for such damages. A computation will show that the verdict must necessarily have been made up as follows: Damages for breach of the charter-party, $1,400; interest thereon from November 8, 1873, $228.83; commissions, $40; total, $1,668.83.

A new trial was denied, and judgment entered pursuant to the verdict; from which the defendant appealed.

The cause was submitted for the appellant on the brief of *Cotzhausen, Smith, Sylvester & Scheiber:*

1. Conceding that Bohne was authorized to contract for defendant, this was a personal trust which he could not delegate to plaintiff. Much less could he authorize plaintiff to contract in his own name (*Humble v. Hunter*, 12 Q. B., 310; Bacon's Ab., "Authority," D); nor was there any custom which authorized such a contract. 2 Greenl. Ev., § 252; *Catlin v. Bell*, 4 Camp., 183; *Solly v. Rathbone*, 2 Mau. & Sel., 298; *Schmaling v. Thomlinson*, 6 Taunt., 146. Defendant never ratified plaintiff's contract with knowledge of the fact that it was made in the name of the latter, or with full knowledge of its terms; the contract did not disclose plaintiff's agency; there was, therefore, no privity of contract between Jones & Co. and defendant, and the latter is not liable in this action. Story on Agency, §§ 147, note 4, 160 and note 1, and 339; 12 Q. B., 310; *Graves v. Boston Marine Ins. Co.*, 2 Cranch, 419; Year Book, Hen. VII, 4 fol., 38; 12 Alb. L. J., 251; *Long v. Coburn*, 11 Mass., 97; *Stackpole v. Arnold*, id., 27; *Fenly v. Stewart*, 5 Sandf. S. C., 101. 2. Defendant should have been permitted to state the very nature and terms of the authority given to Citterly; and the error in excluding his testimony was not cured by the subsequent admission of Citterly's statement. Starkie's Ev. (8th Am. ed.), 828. 3. The offer of the award in evidence was an attempt to drag into the case matter which had been previously stricken out of the complaint by order of this court. Its admission may have been prejudical to defendant, and is therefore cause for reversal. *Pickett v. Crook*, 20 Wis., 359; *Brobst v. Brock*, 10 Wall., 519. 4. A telegram is subject to errors in transmission, and the original message as written should be produced or its absence accounted for. 2 Parsons on Con. (6th ed.), 257, notes (g) (t); *Howley v. Whipple*, 48 N. H., 487; *Williams v. Brickell*, 37 Miss., 682; *Matteson v. Noyes*, 25 Ill., 591; *Kinghorne v. Montreal Tel. Co.*, 18 Upp. Can. (Q. B.),

60; Scott & Jarn. on Tel., §§ 340, 341; 7 Alb. L. J., 178.
5. The defendant authorized Citterly to contract upon a certain condition only, and there is no evidence that he knew, at the time plaintiff claims a ratification, that the condition had not been complied with; indeed there is proof that, on hearing plaintiff's telegram, he repudiated the contract, unless that condition were fulfilled.    On this point the *onus* of proof is with the plaintiff, and such proof must be positive.  *Fitzgerald v. Dressler*, 97 Eng. C. L., 395.  If ignorant of the facts when affirming the unauthorized act of an agent, the principal may, upon learning them, disaffirm within a reasonable time (*Adams Exp. Co. v. Trego*, 35 Md., 47; *Bross v. Worth*, 40 Barb., 648); and without a full knowledge of all the facts, no ratification will be effectual to charge the principal, whether the assumed agent be an actual one exceeding his authority or a mere stranger (*Meade v. Brothers*, 28 Wis., 689; *Ladd v. Hildebrant*, 27 id., 135; *Ætna Ins. Co. v. Northwestern Iron Co.*, 21 id., 458; *Nixon v. Palmer*, 4 Seld., 401; *Rowan v. Hyatt*, 45 N. Y., 138; *Bross v. Worth*, 40 Barb., 648; *Roach v. Coe*, 1 E. D. Smith, 189; *Spadone v. Manvel*, 2 Daly, 263; *Hardeman v. Ford*, 12 Ga., 205; *Billings v. Morrow*, 7 Cal., 171; *Commercial Bank v. Jones*, 18 Tex., 811; Bigelow on Estop., 506; *Combs v. Scott*, 12 Allen, 493; 1 Parsons on Con., 52); and in the latter case something more must be shown than mere silence.  *Hays v. Stone*, 7 Hill, 128; 2 Story's Eq. Jur., 197.  Here defendant did repudiate in fact to his agent Citterly, which was all he was required to do.    6. There was no evidence that Jones & Co. were at any time ready to perform their part of the contract.    7. Defendant was entitled to the instruction asked as to the weight to be given to evidence of verbal admissions.

For the respondent, a brief was filed by *Finches, Lynde & Miller*, and there was oral argument by *H. M. Finch*.  They argued, 1. That it was the duty of defendant, when informed of the contents of plaintiff's telegram, to promptly repudiate

the act, if done without authority. *Farrington v. Field*, 10 Wall., 148; *Ladd v. Hildebrant*, 27 Wis., 135; *Benedict v. Smith*, 10 Paige, 130; *Cairnes v. Bleecker*, 12 Johns., 304; *Codwise v. Hacker*, 1 Caines, 539; *Armstrong v. Gilchrist*, 2 Johns. Cas., 430; Story on Agency, §§ 255–258 and notes; Dunlap's Paley, 171, and note on 172; *Amory v. Hamilton*, 17 Mass., 109. 2. That, as the verdict was clearly right, the court ought not to reverse for any error which could not have changed the result. 26 Wis., 285; *Appleton v. Barrett*, 29 id., 221; *Blair v. Milwaukee & Prairie du Chien R. R. Co.*, 20 id., 262; 16 Wall., 577; 10 id., 519, 263; *Cooper v. Coates*, 21 id., 105; *Ketchum v. Zeilsdorff*, 26 Wis., 514; *Kellogg v. Chicago & Northwestern R'y Co.*, id., 223; *Eaton v. Wooley*, 28 id., 628.

LYON, J. I. It does not appear that the defendant ever expressly authorized the plaintiff to execute the charter-party in his own name, or that he knew that the plaintiff had done so until after the latter had paid Jones & Co. the damages awarded them for a breach thereof. But we regard this circumstance as quite immaterial. By making the contract in his own name, the plaintiff became liable to Jones & Co. as principal, at their option; but if he had authority to make the contract, he thereby became, as to the defendant, merely a surety for its performance. If an agent who makes a contract for his principal, sees fit to become surety for the performance of such contract by the latter, no good reason is perceived why he may not do so, and become thereby entitled to all of the legal rights of a surety, although the consent of the principal thereto may not have been first obtained. If the agent is compelled to pay the damages resulting from a breach of such contract, because of his suretyship, one of those rights is to recover of his principal the amount so paid for him.

If the plaintiff had authority to charter the defendant's

vessel to Jones & Co., or, what is equivalent thereto, if he made the contract without such authority, and the defendant subsequently ratified it, Jones & Co. had a valid cause of action against the defendant to recover the damages resulting from the breach of such contract. *Stowell v. Eldred*, 39 Wis., 614, and cases cited. It would seem to follow, that, under the same circumstances, the defendant would be liable over to his surety, the plaintiff, after the latter had been compelled to pay such damages.

II. It becomes necessary, therefore, to determine whether the defendant, either by previous authority conferred by him, or by subsequent ratification, became bound by the contract made by the plaintiff with Jones & Co.

On the trial, the learned counsel for the plaintiff did not attempt to show that either Citterly or Bohne had previous authority from the defendant to negotiate for the charter of his vessel, but persistently, and with considerable success, objected to the admission of any testimony on behalf of the defendant tending to show what authority the defendant had given in that behalf. Thus the plaintiff's case was rested on the proposition that the defendant had ratified the contract for the charter of his vessel, and thus became bound by it, just as he would have been bound had he previously authorized the plaintiff to enter into such a contract. The learned circuit judge placed the case upon the same ground, by instructing the jury that if there was not such ratification by the defendant, the plaintiff could not recover. Hence the question is narrowed to one of ratification alone.

The rule as to what amounts to a ratification of an unauthorized act, is elementary, and may safely be stated thus: When a person assumes in good faith to act as agent for another in any given transaction, but acts without authority, whether the relation of principal and agent does or does not exist between them, the person in whose behalf the act was done, upon being fully informed thereof, must, within a rea-

sonable time, disaffirm such act, at least, in cases where his silence might operate to the prejudice of innocent parties, or he will be held to have ratified such unauthorized act.

In this case, if the defendant failed to disaffirm the contract made by the plaintiff with Jones & Co. when he was informed of it by the plaintiff's despatch to Bohne, his silence might have been injurious to the plaintiff; for had the latter been promptly informed that he had no authority to charter the defendant's vessel, probably he could have chartered other vessels in her place for Jones & Co. at the same rates, or made some other arrangement with that firm to protect himself from loss because of such disaffirmance. It should be observed that there is no room to doubt that the plaintiff believed he had authority to charter the defendant's vessel, and that he acted in the matter in perfect good faith.

In addition to the direct testimony tending to show that the defendant failed to disaffirm the act of the plaintiff when informed that he had made the contract with Jones & Co., there was some testimony tending to show that, about the time the vessel was chartered, the defendant said to a witness that he had chartered the "Sawyer" to arrive at Milwaukee at ten cents.

We think the testimony on that subject was sufficient to authorize the judge to submit the question of ratification to the jury. This was done with an instruction, in substance, that if the defendant understood the contents, force and effect of the telegram from plaintiff to Bohne, and did not then, or within a reasonable time, protest against and repudiate the act of the plaintiff, it was a ratification of such act, and he was liable on the charter-party as a principal. It seems to us that this instruction is in harmony with the rule on that subject above stated.

The jury, under such instruction, having found for the plaintiff, it has become a verity in the case that the defendant ratified the contract of the plaintiff with Jones & Co., and is

liable upon it, the same as though the plaintiff had been duly authorized by the defendant, in the first instance, to make such contract.

III.   In the foregoing discussion it is assumed that the telegraphic despatch from Bohne to the plaintiff was properly in evidence; and upon that assumption the remark is based that the plaintiff executed the charter-party in good faith.

The telegram received by the plaintiff at Milwaukee from Bohne was read in evidence, against the objection of the defendant; and the message delivered in the office at Buffalo was not produced, or its absence accounted for.

The learned counsel for the defendant insist that the latter is the original, and should have been produced; and that the message received by the plaintiff was but secondary evidence, at most, and could not properly be received until the loss of the original had been proved.

In a late treatise on the subject (Scott & Jarnagin on the Law of Telegraphs), it is said that "telegraph messages are instruments of evidence for various purposes, and are governed by the same general rules which are applied to other writings." (§ 340.)   Also, that "the original message, whatever it may be, must be produced, it being the best evidence; and in cases of its loss, or inability to produce it from other cause, the next best evidence the nature of the case will admit of, must be furnished.   If there is a copy of the message existing, it should be produced; if not, then the contents of the message should be shown by parol testimony." (§ 341.)   We believe the above extracts contain a correct statement of the law, and so hold.

It only remains to determine which was the original message, that delivered to the telegraph company by Bohne at Buffalo, or that received by the plaintiff from the telegraph office in Milwaukee.

Discussing a similar question in *Durkee v. Vt. C. R. R. Co.*, 29 Vt., 127, REDFIELD, Ch. J., stated the law as follows: " In

regard to the particular end of the line where inquiry is first to be made for the original, it depends upon which party is responsible for its transmission across the line, or, in other words, whose agent the telegraph is. The first communication in a transaction, if it is all negotiated across the wires, will only be effective in the form in which it reaches its destination. In such case, inquiry should first be made for the very despatch delivered. In default of that, its contents may be shown by the next best proof." (p. 140.) To the same effect are *Trevor v. Wood*, 36 N. Y., 307, and *Dunning v. Roberts*, 35 Barb., 463. In *Howley v. Whipple*, 48 N. H., 487, it was sought to prove that a person was in Montreal on a given day, by showing that a telegram, purporting to have been sent by him from that place on that day, was received at a town in New Hampshire. It was held that the message received did not prove the fact that the supposed sender thereof was then in Montreal. The decision was doubtless correct. But the court in that case recognized the correctness of the rule laid down in the cases above cited.

*Matteson v. Noyes*, 25 Ill., 591, *Kinghorne v. The Montreal Telegraph Co.*, 18 Upper Canada (Q. B.), 60, and *Williams v. Brickell*, 37 Miss., 682, are cited by counsel for defendant as authorities for the opposite doctrine. In *Matteson v. Noyes*, the telegram purported to have been sent by the appellee to a witness, and was offered in evidence by the appellant, and admitted. Its contents or purport is not given in the report of the case, nor are we informed of the purpose for which it was offered. It does not appear that its admission in the court below had any influence on the decision of the case by the appellate court. For these reasons the case as reported is valueless as authority. *Kinghorne v. The Montreal Tel. Co.* was an action against the company for failure to deliver a message, and hence is not in point. It is quite true, however, that we find language in the opinions in both the above cases which go far to sustain the views of counsel for the de-

fendant; yet the cases cannot properly be regarded as authority in a case like this. In the case in 37 Miss., *supra*, parol proof was received of the contents of a telegraphic message, without previous proof of the loss of the original message. This was very properly held to be error. The case is not an authority either way on the question before us.

After a careful consideration of the question, and after full examination of all the adjudications we can find bearing upon it, we have reached the conclusion that the law applicable to this case is correctly stated by Judge REDFIELD in *Durkee v. Vt. C. R. R. Co.*, *supra*.

The same principle is also laid down in Scott & Jarnagin on Telegraphs, as follows: " § 345. In all cases where the company can be considered as the agent of the sender of the message, in controversies arising out of the communication by telegraph between the sender and the person to whom the message is addressed, the message received by such person must be regarded as the original. If it differs from the message delivered for transmission, by which the sender has suffered damage, he must look to his agent, the telegraph company, for indemnity. In such controversies between the sender and receiver, the message received is the best evidence."

This brings us to determine whether, in the present case, the telegraph company can properly be considered the agent of the defendant for the transmission of the message from Bohne to the plaintiff. We think it must be held that the company was the agent of the defendant for that purpose, on either of two grounds: 1. Citterly was the agent in fact of the defendant to charter his vessel for a load of wheat from Milwaukee to Buffalo, at ten cents per bushel, but on condition that a cargo of coal for Milwaukee could be procured for her at Buffalo — the vessel then being on her way to the latter port. There is no doubt whatever that Citterly might lawfully employ a vessel-broker to aid him to negotiate such

charter.    Story on Agency, § 201.    He employed Bohne for that purpose, who thereby also became the agent of the defendant.    Bohne procured the vessel to be chartered at the authorized rate, but disregarded the condition concerning the cargo of coal.    His act, although not a compliance with the terms of his agency, was, nevertheless, within the scope of his authority, and hence was binding upon the defendant.    For the rule is elementary, that the principal is bound by the unauthorized act of his agent, if the act is within the scope of the agency.    It follows that the message sent by Bohne to the plaintiff directing him to charter the defendant's vessel, was the message of the defendant, and the telegraph company was his agent for the transmission thereof.    2. The same result follows the ratification by the defendant of the contract made by the plaintiff for the charter of the vessel.    The message from the plaintiff to Bohne, and the remark of the defendant when he saw it, show that the plaintiff knew or believed that Bohne had telegraphed authority to the plaintiff to charter the vessel.    It is settled by the verdict that the defendant did not disaffirm the act of the plaintiff in making the contract, and there is no proof of any special disaffirmance by him of the act of Bohne which authorized plaintiff to do so. As the case stands, it must be held that defendant also ratified the telegram sent by Bohne to the plaintiff; and by so doing he made it his own, precisely as it would have been had he, in the first instance, authorized Bohne to send it.    Story on Agency, § 249.

We conclude that the telegraph company was the agent of the defendant for the transmission of the message of Bohne, and hence, that the message received by the plaintiff is the original, and was properly received as evidence in the case.

IV.    The defendant offered testimony to prove that after he and Citterly left the office of Bohne on the occasion when the plaintiff's telegram was shown them, the defendant, in conversation with Citterly alone, disaffirmed and repudiated the

act of the plaintiff, and declared that he would not send the vessel unless the cargo of coal to that port could be procured. The court refused, under objection, to allow the witness Citterly to testify thereto, but subsequently the defendant so testified without objection. We think the rejection of this testimony was not error. It related not to transactions pertaining to the *res gestæ*. The disaffirmance, to be effectual, should have been made to the plaintiff, or, at least, to Bolme.

V. The following instruction was proposed on behalf of the defendant, and refused: "Admissions not being under oath, and liable to be misunderstood, as against sworn testimony, are considered very feeble evidence, unless fully corroborated." The instruction was properly refused. When a deliberate admission of a party against his own interest is satisfactorily proved, it is not necessarily feeble evidence, and does not require corroboration. It may be that the instruction was intended to refer to the proof of admissions, and not to the admissions themselves. Conceding that the instruction admits of that interpretation, we still think it was properly refused. The weight to be given to testimony of mere admissions is to be determined by the jury; yet it may be proper for the court to say to the jury that such testimony is usually unsatisfactory and should be received with great caution. But it would scarcely be correct to say in every case, without qualification or exception, that it is very feeble testimony unless fully corroborated; for cases may readily be supposed, where an admission might be satisfactorily proved by the uncorroborated testimony of a single witness.

VI. When the proceedings before the board of arbitrators of the chamber of commerce, and the award of the board, were read in evidence, the counsel for the plaintiff stated that he offered them merely for the purpose of showing that the plaintiff paid the amount of money named in the award in good faith and pursuant to the award. We think the testimony was improperly admitted. The good faith of the plaintiff

in paying Jones & Co. their damages resulting from the breach of the charter-party, is not in issue, but only his legal liability to pay such damages. The purpose assigned was therefore insufficient to authorize the admission of the testimony. Considered as testimony in the case generally (and it was probably so received), such testimony was clearly inadmissible under the circumstances, even if admissible in any event against a third party — a point which we do not here decide. It was not accompanied by proof of notice to the defendant of the proceedings in the chamber of commerce, or of any fact in any manner connecting him with those proceedings. The testimony is no broader than the averment in that behalf which was stricken from the complaint. (36 Wis., 612.) The averment being irrelevant and redundant, the testimony to support it, and which is not admissible for any other purpose, is necessarily immaterial. The infirmity which excluded the averment from the pleading, should also have excluded the testimony from the consideration of the jury.

But although the court erred in admitting the chamber of commerce proceedings, we think the error could not have prejudiced the defendant. The award could only affect the amount of damages, and in that respect the verdict corresponds with it. But independently of the award, on the indisputed evidence, the verdict must necessarily have been the same; for it is conclusively proved that the cause of action on the charter-party accrued September 15th; that the rate of wheat freights from Milwaukee to Buffalo on that day was $13\frac{1}{2}$ cents per bushel; and that the "J. D. Sawyer" was chartered for 40,000 bushels. Had the circuit judge directed the jury, in case they found for the plaintiff, to assess his damages at $1,400 for the defendant's failure to fulfill the terms of the charter-party (that being the sum paid by the plaintiff to Jones & Co.), on the testimony in this record we could not disturb a verdict rendered pursuant to such direction.

Although not considered in their order, it is believed that

the foregoing observations dispose of all the material errors alleged by the appellant. Finding no error in the record which could have prejudiced the appellant, the judgment of the circuit court must be affirmed.

*By the Court.*—Judgment affirmed.